[Crim. No. 22982. First Dist., Div. Three. Jan.3, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DAN WEST, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Richard S. Kessler and David R. Feld, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**WHITE, P. J.**—Defendant and appellant Dan West appeals from the judgment (order granting probation) of the Superior Court of San Francisco County entered after a jury found him guilty of two counts of robbery. (Pen. Code, § 211.) Appellant contends on appeal that (1) the trial court committed reversible error in not allowing defense counsel to refer to newspaper articles in his closing argument, and (2) the trial court committed reversible error in refusing to give the special instruction appellant requested on reasonable doubt and identification.

On October 12, 1980, around 6 p.m., Wallace and Betty Resoff, entered People's Park on Sixth and Minna Streets in San Francisco. They got a drink of water and sat on a park bench. A few minutes later, appellant sat down across from the Resoffs and engaged them in two to five minutes of friendly conversation. Mr. Resoff described appellant as a small, skinny man with a dark mark or scar to the right of his eyebrow. The Resoffs thought appellant was 25 to 30 years old.

Appellant left and returned a few minutes later. Appellant grabbed Ms. Resoff's watch from her wrist. At about the same time another man grabbed Mr. Resoff and held an object which felt like a knife to his throat. The man took Mr. Resoff's watch and glasses. Appellant forced Ms. Resoff to take a ring off her finger.

The Resoffs left the park and called the police. The Resoffs described appellant to the police and accompanied them on a search of the park and the immediate neighborhood. They were unable to locate appellant.

The next morning Mr. Resoff returned to the park to try to find the man who had taken his wife's ring. Mr. Resoff saw appellant sitting on a bench with two other men. The police responded to Mr. Resoff's telephone call and arrested appellant.

Appellant and his two teenage daughters testified that appellant spent the entire day of the robbery in bed because he was ill. They also testified that since about March of 1980 appellant has had trouble using his hands. Appellant cannot open doors or button his shirts.

Ben Richards testified that on October 12, 1980, he was working as a volunteer monitor at People's Park. Richards has known appellant for five or six years. Richards witnessed the Resoffs being robbed. Richards testified that appellant was not one of the robbers and that appellant was not at the park that day. Richards also testified that appellant's ability to use his hands is limited. He stated that appellant has difficulty "getting cigarettes out of his pocket."

*Identification Instruction*

■ The trial court has a duty to give requested defense instructions which direct the jury's attention to evidence from which the jury could infer a reasonable doubt of defendant's guilt. Under this rule a defendant is entitled to an instruction relating identification to reasonable doubt. (*People* v. *Hall* (1980) 28 Cal.3d 143, 158-160 [167 Cal.Rptr. 844, 616 P.2d 826]; *People* v. *Pierce* (1979) 24 Cal.3d 199, 211 [155 Cal.Rptr. 657, 595 P.2d 91]; *People* v. *Sears*

(1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847]; *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 386-388 [121 Cal.Rptr. 69].) In the present case, defense counsel requested the trial court to give a special instruction which listed eight factors the jury should consider in determining if the People had met its burden of proving identity.

"Defendant's Proposed Special Instruction" reads as follows: "In determining whether reasonable doubt exists in regard to the identification of the defendant, Dan West, you should consider, among others, the following factors:

"Any evidence relating to the witness' opportunity to observe the alleged criminal act;

"Any evidence relating to the witness' opportunity to observe the persons committing that act;

"Any evidence relating to the stress under which the witness made observations;

"Any evidence relating to whether the witness was able to provide a description of the perpetrator of the act;

"Any evidence relating to any inconsistency between the descriptions of the perpetrator and the defendant's description;

"Any evidence relating to the cross-racial nature of the identification;

"Any evidence relating to whether the witness had an uncorrected visual deficiency;

"Any evidence relating to the witness' ability to make other identifications."

The trial court refused to give this instruction. The trial court did give CALJIC No. 2.91 concerning reasonable doubt and identity, CALJIC No. 4.50 concerning reasonable doubt and alibi, as well as CALJIC No. 2.20, the general instruction on credibility of witnesses.

The People appear to concede that the refusal of the trial court to give appellant's "Proposed Special Instruction" was error, but argue that the error was harmless. In *People* v. *Hall, supra,* 28 Cal.3d 143, 159, the California Supreme Court held that the error in not giving a form of appellant's special instruction on identification was not prejudicial error, since the trial court did give CALJIC No. 2.91 and CALJIC No. 2.20. (Accord, *People* v. *Lybrand* (1981) 115 Cal.App.3d 1, 13 [171 Cal.Rptr. 157].)

Even though the trial court gave CALJIC Nos. 2.20 and 2.91, we do not deem the failure to give appellant's "Proposed Special Instruction" to be harmless error. Whether an error is harmless or not depends on the particular facts of each case and on the specific instruction refused. Here the proposed instruction mentioned several factors relevant to this case which are not mentioned in the standard instructions. The evidence on identification was conflicting. Because identification was the sole issue in this case, the error cannot be deemed harmless. The closeness of this case is demonstrated by the fact that the jury asked for rereading of a substantial portion of the testimony, asked for a rereading of some instructions and at one point reported itself deadlocked.

### Newspaper Articles

Defense counsel argued to the jury that misidentification was a common phenomenon and that Mr. and Mrs. Resoff had identified the wrong man. Defense counsel sought to emphasize that misidentification was a common thing by referring to newspaper articles concerning specific instances of misidentification. The district attorney's objection to defense counsel's proposed use of the newspaper articles was sustained. Defense counsel proceeded with her discussion of misidentification stating that there had been television and newspaper accounts in the past few months dealing with persons unjustly convicted of serious crimes on the basis of faulty eyewitness identifications.

Appellant contends that the trial court committed reversible error in refusing to allow defense counsel to emphasize her argument on the dangers of eyewitness identification by referring to newspaper articles dealing with recent cases of misidentification.

In a summation to the jury, counsel "may state matters not in evidence that are common knowledge, or are illustrations drawn from common experience, history, or literature." (*People* v. *Love* (1961) 56 Cal.2d 720, 730 [16 Cal. Rptr. 777, 17 Cal.Rptr. 481].) There are two conflicting lines of authority on whether newspaper clippings on matters of common knowledge may be used and/or read to the jury by counsel in closing argument.

In *People* v. *Guzman, supra,* 47 Cal.App.3d 380, 392, the court stated: "Appellant complains that his counsel was unduly restricted in oral argument. It does appear that he was not permitted to refer to magazine and newspaper articles reflecting illustrations of incidents of misidentification, a matter of common knowledge, and which should have been allowed under *People* v. *Woodson* (1964) 231 Cal.App.2d 10 . . . , and that he was stopped from reading from a book merely because he was reading and not because the court examined what he intended to read. This violates the rules of *People* v. *Travis* (1954) 129

Cal.App.2d 29 . . . , which allows reading of material stating proper argument in language counsel feels is better than his own."

The contrary view is expressed in *People* v. *Mendoza* (1974) 37 Cal.App.3d 717, 725 [112 Cal.Rptr. 565], wherein the court stated: "Counsel's summation to the jury must be based upon facts shown by the evidence or known judicially. (*People* v. *Evans,* 39 Cal.2d 242, 251 . . . .) Counsel may refer the jury to nonevidentiary matters of common knowledge, or to illustrations drawn from common experience, history, or literature (*People* v. *Love,* 56 Cal.2d 720, 730 . . .), but he may not dwell on the particular facts of unrelated, unsubstantiated cases. The court here properly permitted defense counsel to draw on common experience for the general notion that children sometimes fabricate accusations against innocent persons, but the court properly denied defense counsel license to read newspaper clippings about unrelated specific crimes, hearsay material which could only confuse the jury with irrelevant facts."

■ Since we have determined that this case must be reversed because the trial court refused to give appellant's special instruction on identification, we are not required to decide which of the two conflicting lines of authority presents the correct view. However, we are of the opinion that whether a particular newspaper or magazine article should be read to the jury, is a matter that is addressed to the sound discretion of the trial court.

In exercising that discretion, the trial court should read the newspaper article and consider whether it relates to matters of common knowledge or substantiated illustrations of common experience, whether the article is relevant to the case and whether the article may confuse the issues in the case. (See *People* v. *Woodson* (1964) 231 Cal.App.2d 10, 15-16 [41 Cal.Rptr. 487].)

The judgment (order granting probation) is reversed.

Feinberg, J., and Barry-Deal, J., concurred.