[Crim. No. 14981. Fourth Dist., Div. Two. Jan. 17, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
CALVIN ROSCOE YEATS, Defendant and Appellant.

**COUNSEL**

Andrew V. Alder, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Frederick M. Millar, Jr., and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNEDY, J.***—Defendant was convicted by a jury in the Riverside Superior Court of violating Vehicle Code section 20001 (hit and run with injuries). He was sentenced to prison and appeals.

The facts relevant to this appeal are as follows: At 10:30 p.m. on August 30, 1982, Riverside Deputy Sheriff Preston was on duty and driving a marked patrol car. At the intersection of Markham and Date his car was struck at a high rate of speed by a green Buick which had run a stop sign controlling traffic on Date Street. The Buick was disabled by the accident. Its driver got out of the car, talked momentarily to the deputy, then fled on foot. As a result of the accident Deputy Preston suffered four broken ribs and a punctured lung.

The only issue in the case was the identity of the driver of the green Buick. The evidence showed that it was owned by the defendant's mother. The only witness positively identifying defendant as the driver was Deputy Preston, who picked the defendant out of a pretrial photographic lineup and who positively identified defendant in court. Preston's identification was based on a fleeting glimpse before the accident and a contact of some 10 to 15 seconds after the accident.

Cheryl Ward, who lived near the scene of the accident, was called as a witness for the prosecution. She testified that she heard the accident and rushed to the scene. She was asked by the district attorney whether she saw defendant at the scene and she answered: "It looked like him but I can't say for sure that it was him." She also testified she had seen the green Buick driven a few hundred times, always by her neighbor, the defendant.

George Hoover, an elderly man who lived about 700 feet from the scene of the accident, was called as a witness by the defense to impeach the officer's testimony. He testified that when he arrived at the scene there were two men present in addition to the deputy, but neither man was the defendant. His testimony also tended to show that the officer was severely injured, was in shock, and was passing in and out of consciousness. The purpose of the testimony was to suggest that the deputy's injuries impaired his ability to make reliable observations at the scene, thereby casting doubt on the deputy's subsequent identification of defendant as the other driver.

In attempting to impeach Hoover, the district attorney was permitted over objection to show that Hoover was contacted after the accident by a man,

---

*Assigned by the Chairperson of the Judicial Council.

not the defendant, who attempted to pressure Hoover into testifying, falsely, that the deputy's headlights were off at the time of the accident. The court carefully admonished the jury that "there is no evidence whatsoever that the Defendant caused the threat." He instructed the jury, rather, that the threat "cannot be considered by you for any purpose other than the limited purpose, to wit, on the issue of credibility."

The defendant appeals his conviction, contending error in that:

I. The court improperly admitted evidence of threats made to the witness.

II. The court improperly restricted closing argument.

III. The court improperly refused to give pinpoint jury instructions requested by the defense.

### I. Admission of the Evidence of Threats Made to a Witness.

■ Defendant contends that evidence regarding George Hoover being threatened was hearsay, was highly prejudicial and lacked probative value.

Clearly, if the threat had been made by defendant, it would have been admissible as an admission by conduct. (*People* v. *Jaquette* (1967) 253 Cal.App.2d 38, 48 [61 Cal.Rptr. 209].) The issue is much different where it cannot be shown that defendant either made the threat or caused it.

*People* v. *Brooks* (1979) 88 Cal.App.3d 180 [151 Cal.Rptr. 606], is on point. There, it was held proper under Evidence Code section 780 to admit a threat from a third person, not the defendant, as impeachment of a witness on the theory that it showed "a bias, interest, or other motive" for the witness not to tell the truth and for the further reason that it reflected on the witness' "attitude toward the action in which he testifies or toward the giving of testimony." (*Id.*, at p. 187, fn. 3.) According to *Brooks*, the focus of the inquiry is on the witness' state of mind, not the defendant's conduct. Therefore it is irrelevant whether the threat comes from the defendant.

It is also clear, according to *Brooks*, that the prosecution must first establish the relevance of the witness' state of mind by demonstrating that the witness' testimony is inconsistent or otherwise suspect. Here, Hoover's testimony was significantly in conflict with Deputy Preston's; if believed, Hoover's testimony raised major questions about Preston's mental competence after the accident and hence his ability to identify defendant as the driver of the green Buick. Accordingly, we conclude that Hoover's credibility was

a material issue and that it was therefore proper to admit evidence tending to show he was fearful, thereby providing a motive not to tell the truth.

We also commend the court's admonition to the jury emphasizing that there was no evidence that the defendant had caused the threat. Such admonition served to eliminate any prejudice which otherwise might have been directed at defendant.

Finally, common sense suggests that the evidence of the threat may have been more helpful than harmful to the defendant. The driver of the green Buick would have the greatest motive to make the threat. A reasonable inference is that the person who threatened Hoover was the driver, and that the defendant therefore was not the driver.

## II. The Court's Refusal to Permit Defense Counsel to Refer to Newspaper and Magazine Articles in Argument.

The clerk's transcript includes material that was filed by trial counsel in support of a motion in limine requesting permission to refer, in closing argument, to various articles regarding mistaken identification testimony. Nowhere in the record is it indicated that the motion was made or, if made, that it was ruled upon. We observe that the cover sheet of the documents bears the clerk's stamp dated March 16, 1983. We note that the jury verdict was reached on March 15, 1983, so perhaps the papers were never filed and the motion never made in a timely manner.

We cannot resolve issues raised for the first time on appeal. (*People v. Mills* (1978) 81 Cal.App.3d 171, 175 [146 Cal.Rptr. 411].) In any event, it appears from the record that defense counsel argued exhaustively and effectively on the subject of mistaken identity.

## III. Jury Instructions.

Defense counsel proposed two jury instructions highlighting the identity issue.[1] The court declined to give the instructions.

---

[1]Defendant's proposed jury instruction No. 1 provided as follows:

"In determining whether reasonable doubt exists in regard to the identification of the defendant, Calvin Yeats, you should consider among others, the following factors:

"Any evidence relating to the witness' opportunity to observe the alleged criminal act;

"Any evidence relating to the witness' opportunity to observe the persons committing the act;

"Any evidence relating to the stress under which the witness made observations;

"Any evidence relating to the physical condition the witness was in when he made his observations;

"Any evidence relating to whether the witness was able to provide a description of the

Jury instructions tailored to the defendant's theory of the case have been offered for many years in California. Before 1970, the courts normally held that, as long as the trial court gave all relevant CALJIC instructions, no harm resulted from refusing to give instructions pinpointing the defendant's theory of the case. In *People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465, P.2d 847], the California Supreme Court sent a new message to trial courts. In reversing and remanding for retrial, the court stated (at p. 190): "Although the instruction offered in the instant case by the defendant was defective in form in some respects, the court upon retrial should give appropriate instructions, if they are requested, relating the evidence as to motive, furtiveness, and the relationship of defendant and his victims to the issue of premeditation and deliberation in the light of the rule requiring proof beyond a reasonable doubt."

Following *Sears,* the next significant case dealing with pinpoint jury instructions was *People* v. *Guzman* (1975) 47 Cal.App.3d 380 [121 Cal.Rptr. 69]. In *Guzman,* the defendant's proposed instruction No. 4,[2] focusing the jury's attention on the issue of identity, was refused by the trial court. The appellate court held that such refusal was error. The court stated at page 388: "If said error stood alone we would hold it nonprejudicial in the light of the giving of general instructions on the credibility of witnesses (CALJIC No. 2.20) which cover many of the matters which might affect the validity

perpetrator of the act;

"Any evidence relating to any inconsistency between the description of the perpetrator and the defendant's description;

"Any evidence relating to the cross-racial nature of the identification."

Defendant's proposed jury instruction No. 2 would have advised the jury:

"The burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of defendant as the person who committed the offense before you may convict him. If, from the circumstances of the identification, you have a reasonable doubt whether defendant was the person who committed the offense, you must give the defendant the benefit of that doubt and find him not guilty.

"In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense."

[2]The instruction appears in full at page 387 and states:

"'You are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is on the state to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant.

"'In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense.'"

of a witness' identification testimony, and the last paragraph of CALJIC No. 4.50 on alibi, which expressly requires proof beyond a reasonable doubt as to defendant's presence at the scene of the crime . . . ." Defendant's proposed jury instruction No. 2, offered in the instant case, is substantially identical to the defendant's proposed instruction No. 4 in *Guzman*, and according to the reasoning of *Guzman*, should have been given.

The next significant case to deal with pinpoint jury instructions on the issue of identity was *People* v. *Hall* (1980) 28 Cal.3d 143 [167 Cal.Rptr. 844, 616 P.2d 826]. In *Hall*, the defendant offered jury instruction No. 5 which was based upon the defendant's proposed instruction No. 1 in *Guzman*. Defendant's proposed pinpoint jury instruction No. 1 in the present case distills the substance and omits the argumentative portions of defendant's proposed jury instruction No. 5 in *Hall*. The trial court in *Hall* rejected the jury instruction. The Supreme Court stated at pages 159-160 in *Hall*: "Nichols' proposed instruction No. 5 was identical to one of the instructions which was found to be too long and argumentative in *Guzman* . . . . Further, some of the factors highlighted by the instruction have no application to the present case. Although the trial court did not err in refusing to give the instruction as written, it should not have refused to tailor the instruction to the facts of this case. However, this error was not prejudicial since the trial court did read to the jury CALJIC No. 2.91, as modified at Nichols' request, and CALJIC No. 2.20. In the future, the trial courts should consider and give appropriate instructions involving reasonable doubt and eyewitness identification."

The Attorney General in the present case contends that the trial court's refusal to give defendant's proposed jury instruction Nos. 1 and 2 is supported by the Supreme Court's holding in *Hall*. *Hall* does not support his position; it clearly requires the trial court, on request, to "consider and give appropriate instructions involving reasonable doubt and eyewitness identification."

Two 1983 appellate decisions round out our analysis. In *People* v. *West* (1983) 139 Cal.App.3d 606 [189 Cal.Rptr. 36], the defendant's proposed special instruction[3] was based on the defendant's proposed instruction Nos.

---

[3]It read as follows:

" 'In determining whether reasonable doubt exists in regard to the identification of the defendant, Dan West, you should consider, among others, the following factors:

" 'Any evidence relating to the witness' opportunity to observe the alleged criminal act;

" 'Any evidence relating to the witness' opportunity to observe the persons committing that act;

" 'Any evidence relating to the stress under which the witness made observations;

" 'Any evidence relating to whether the witness was able to provide a description of the perpetrator of the act;

" 'Any evidence relating to any inconsistency between the descriptions of the perpetrator

1 and 2 in *Guzman*. Defendant's proposed jury instruction No. 1 in the present case was based on the instruction offered in *West*. In *West*, the trial court refused to give the special instruction. It did give CALJIC No. 2.91 concerning reasonable doubt and identity, CALJIC No. 4.50 concerning reasonable doubt and alibi, and CALJIC No. 2.20, the general instruction on credibility of witnesses. In *West*, the refusal to give the special instruction was held to be error, the error was determined to have been prejudicial, and the judgment was reversed.

Finally, and subsequent to the trial of the present case, *People* v. *Glaude* (1983) 141 Cal.App.3d 633 [190 Cal.Rptr. 479], was decided. The opinion in *Glaude* does not set forth what, if any, proposed identity instructions were offered and refused. The opinion does observe at page 642 that the following instruction was requested by the defendant and was given by the court: " 'You are instructed that the identity of the defendant as the person who committed the crime is an element of every crime. Therefore, the burden is on the state to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it. [¶] In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense.' "

Since the trial court gave the requested instruction, as well as CALJIC Nos. 2.20 and 2.22, the court in *Glaude* held that "error, if any, in not giving defendant's proffered instructions in this instance was harmless." (*Id.,* at p. 642.) The pinpoint instruction requested and given in *Glaude* is markedly similar to defendant's proposed jury instruction No. 2 requested and rejected by the trial judge in this case.

■    Summarizing the cases, therefore, an unbroken string of authority requires the giving of factually appropriate pinpoint jury instructions correlating the issues of identity and reasonable doubt. Based on all the cases cited, it is clear that the trial court in this case committed error in refusing to give defendant's proposed jury instruction Nos. 1 and 2.

We now turn to the question whether such error requires reversal.

---

and the defendant's description;
    " 'Any evidence relating to the cross-racial nature of the identification;
    " 'Any evidence relating to whether the witness had an uncorrected visual deficiency;
    " 'Any evidence relating to the witness' ability to make other identifications.' " (*Id.,* at p. 609.)

The trial court gave CALJIC No. 2.20 regarding credibility of witnesses, CALJIC No. 2.22 regarding conflicting testimony, CALJIC No. 2.91 regarding reasonable doubt and proof of identity, and CALJIC No. 4.50 regarding alibi.

The evidence pointing to defendant as the driver of the green Buick was strong. The victim, an experienced law enforcement officer, contacted defendant after the accident and spoke to him at close range before defendant fled. The officer selected defendant with ease from a comprehensive photo lineup after the accident. The officer's testimony received strong corroboration from two sources. First, independent evidence showed that the green Buick belonged to defendant's mother and was normally driven by defendant. Defendant's residence was very close to the scene of the accident. Second, even though Cheryl Ward did not positively identify defendant as the driver, her testimony provided strong circumstantial corroboration of Deputy Preston.

In summary, the conviction was based upon an in-court identification by a victim with a high level of training in making accurate observations, who had an adequate opportunity to observe the defendant at the scene, and who made a positive pretrial identification from a proper photographic lineup. The victim's testimony was corroborated by strong circumstantial and eyewitness evidence. CALJIC Nos. 2.20, 2.22, 2.91 and 4.50 were given to the jury. We therefore conclude that failure to give defendant's proposed jury instruction Nos. 1 and 2 was harmless error.

For the reasons stated, we affirm the judgment.

Morris, P. J., and Rickles, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1984.