[Crim. No. 15359. Fourth Dist., Div. One. Mar. 9, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
DARIN REYNARD PALMER, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Victoria Sleeth, Deputy State Public Defender, and Thomas E. Mullins for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Frederick R. Millar, Jr., John W. Carney, Robert M. Foster and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WORK, J.**—On this appeal we address an all-too-recurring issue, the trial court's failure to give defendant-requested instructions specifically directing the jury's attention to evidence from which it may find reasonable doubt. In light of the general holding in *People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847], and the precise admonition of *People* v.

*Hall* (1980) 28 Cal.3d 143, 159, 160 [167 Cal.Rptr. 844, 616 P.2d 826], on the duty to give requested special instructions relating to the reliability of eyewitness identifications in appropriate cases, we are surprised by the regularity with which these binding authorities are seemingly disregarded.

Darin R. Palmer was convicted of six robbery counts (Pen. Code,[1] § 211), five with use of a firearm (§ 12022.5), arising from a single transaction. He claims the trial court prejudicially erred by refusing his requested, specific eyewitness identification instructions.[2]

---

[1]All statutory references are to the Penal Code.

[2]The requested instruction read: "One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The state has the burden of proving identity beyond a reasonable doubt. Therefore, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of a defendant before you can convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

"In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense.

"Identification testimony is an expression or belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

"In appraising the identification testimony of a witness, you should consider the following:

"1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

"Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available.

"2. Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

"If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant as a factor bearing on the reliability of the identification.

"You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

"3. You must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

"4. In addition to the factors which were previously pointed out for your consideration as to the accuracy of an identification you should consider whether or not the witness is the same race as the individual he is attempting to identify. If they are not, you should consider the effect this would have on an accurate identification.

"I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification you must find the defendant not guilty."

The only evidence against Palmer is the eyewitness identifications by the robbery victims. We have evaluated the circumstances surrounding each identification in light of the specific factors detailed in the proposed instruction and the special circumstances in which each was made. In this case where there is evidence of misidentifications during photo lineups, cross-racial identifications and some solely in-court identifications, we hold giving only the unmodified general CALJIC instruction Nos. 2.20 and 2.91 prevented Palmer from meaningfully focusing the jury's attention on the potential inaccuracy of the identifications. Because there is no evidence to corroborate these eyewitness identifications, and no witness is shown to have any special expertise in identification, the contacts were brief, and significant identifying features of Palmer's teeth were not noticed by any witness, we find the error prejudicial and reverse the judgment.

### Factual and Procedural Background

Two black men robbed three employees and three customers of a service station at night. One robber was armed with a shotgun. Palmer was identified as the armed robber at trial by each victim.

The defense was based totally on misidentification. Four victims viewed photo lineups in which Palmer appeared. Three could not unequivocally identify Palmer. Victim Holland initially picked out two different photographs, one of which was Palmer's, and was unable to decide which one was the robber. He stated he looked directly at the robber "[p]robably no longer than 30 seconds at the most . . . 30 or 40 seconds." He could recall nothing of the robber's clothing. When shown the photo lineup, Holland was instructed by an officer "just to the best of my knowledge to try to pick a picture out that most identified the person that robbed me." He was fairly positive about the photo identification. When he saw Palmer in person—at the preliminary hearing, with no other black men present—he "felt positive about it," and at trial had no doubt Palmer was the armed robber.

Victim Gray, a black, chose Palmer's picture out of the photo lineup as the armed robber. He described the robber's clothes and estimated he looked at the armed robber five minutes. However, Gray saw nothing unusual about the robber's teeth.

Victim McCladdie, a black, could not identify Palmer's picture from a photo lineup, although he stated he had a clearer memory of the robbery at

the time of the photo lineup than at trial. He testified Palmer had twice searched him for money, but could not describe the armed robber's clothes. He identified Palmer at the preliminary hearing and at trial.

Victim Bennet initially did not choose Palmer's picture from the lineup, instead selecting one of the black robbery victims. He admitted he had difficulty distinguishing between black men, however, he was more certain of his identification at the preliminary hearing, where Palmer was the only black man in the court.

Victim Ortiz and her son were also robbed at the service station. Apparently, neither participated in a photo lineup. Ms. Ortiz was definite in her identification in court, claiming to have gotten a good look at Palmer's face as he leaned into her car. Her son was equally positive. Both first identified Palmer at the preliminary hearing, two months after the robbery.

No eyewitness professed any expertise in identification nor claimed a law enforcement background (a factor deemed significant in evaluating eyewitness testimony in *People* v. *Roberts* (1967) 256 Cal.App.2d 488, 491 [64 Cal.Rptr. 70], and *People* v. *Yeats* (1984) 150 Cal.App.3d 983, 992 [198 Cal.Rptr. 264]). None saw anything unusual about the armed robber's teeth, although some claimed to have looked at his face in good light. Palmer's mother testified, without contradiction, Palmer wears a permanent silver brace on his front teeth which was fitted 10 years ago. Palmer displayed his teeth to the jury, apparently confirming this testimony.[3] No direct or circumstantial evidence corroborated the identifications.

Before closing argument, defense counsel asked the court "to allow me to read or paraphrase statements from newspaper articles and court cases on eyewitness identification. I don't propose telling the jury that I'm quoting from a particular magazine, or I don't propose referring to the particular author or the author's findings.

"However, because eyewitness identification is the main issue in this case, I would ask the court to allow me to make references to those things in closing argument . . . ."

The trial court denied permission to defense counsel to refer in argument to newspaper articles and other cases. The record does not identify the material to which defense counsel referred.

---

[3]In addition, both defense and prosecuting counsel in their closing argument referred to a cap on Palmer's tooth.

The trial court refused Palmer's specific instruction as "redundant."[4] It did give CALJIC No. 2.20[5] (credibility of witness) and CALJIC No. 2.91[6] (burden of proving identity based solely on eyewitnesses).

## The Trial Court Erred in Refusing the Identification Instruction Directing the Jury's Attention to Evidence From Which It Might Properly Find a Reasonable Doubt of His Guilt

The instructions proposed are similar to identification instructions discussed in *People* v. *Guzman* (1975) 47 Cal.App.3d 380, 386-388 [121 Cal.Rptr. 69]. They provide guidance for a lay jury in assessing the reliability of the eyewitness identifications made under the varying conditions in this case. *Guzman* held the trial court erred in refusing defendant's proposed eyewitness identification instructions, even though some of those proposed required modification. Although Palmer's proposed instructions are not precisely dovetailed to specific bits of evidence, they are aimed at identification factors uniquely relevant to the reliability of these eyewitness identifications which are not set forth in the standard instructions given. For instance, that in-court identifications are generally less reliable than those where selection is from among members of a similar group; the importance of considering the lapse of time from occurrence of the event until identification is made;

[4]There is no contention the proposed instructions are either legally or factually incorrect, or that they are overlong or ambiguous.

[5]CALJIC No. 2.20 as given, reads: "Every person who testifies under oath [or affirmation] is a witness. You are the sole judges of the believability of a witness and the weight to be given the testimony of each witness.

"In determining the believability of a witness you may consider anything that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness, including but not limited to any of the following:

"The extent of the opportunity or ability of the witness to see or hear or otherwise become aware of any matter about which the witness has testified;

"The ability of the witness to remember or to communicate any matter about which the witness has testified;

"The character and quality of that testimony;

"The demeanor and manner of the witness while testifying;

"The existence or nonexistence of a bias, interest, or other motive;

"Evidence of the existence or nonexistence of any fact testified to by the witness;

"The attitude of the witness toward the action in which testimony has been given by the witness or toward the giving of testimony;

"[A statement previously made by the witness that is [consistent] [or] [inconsistent] with the testimony of the witness.]"

[6]CALJIC No. 2.91 reads: "The burden is on the State to prove beyond a reasonable doubt that the defendant is the person who committed the offense with which he is charged. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of defendant as the person who committed the offense before you may convict him. If, from the circumstances of the identification, you have a reasonable doubt whether defendant was the person who committed the offense, you must give the defendant the benefit of the doubt and find him not guilty."

the cross-racial nature of the identification;[7] the length of time of the eye contact and the circumstances under which it occurred.

We are cognizant of the admonition of our Supreme Court that the defendant who most needs protection from erroneous identification is one who is implicated primarily or solely by eyewitness testimony. (*People v. Bustamante* (1981) 30 Cal.3d 88, 101 [177 Cal.Rptr. 576, 634 P.2d 927].) We are conscious also that jurors are not likely to recognize the unreliable nature of identifications made by strangers to the defendant in the absence of court instructions identifying those factors which can affect the reliability of eyewitness identifications made in a specific case.

■ The Supreme Court in *People v. Hall, supra,* 28 Cal.3d 143, declared: "Under the case law, it is error to refuse to give an instruction requested by a defendant which 'directs attention to evidence from . . . which a reasonable doubt of guilt could be engendered' [citation]. This applies with equal force to a refusal to give a requested instruction which deals with identification in the context of reasonable doubt. [Citing *People v. Guzman, supra,* at p. 387.]" (*People v. Hall, supra,* at pp. 158-159.)

In *Hall,* the court noted the defendant's proposed instruction was identical to one found too long and argumentative in *Guzman,* and further noted "some of the factors highlighted by the instruction have no application to the present case. [Fn. omitted.]" (*People v. Hall, supra,* 28 Cal.3d 143, 159.) However, *Hall* went on: "Although the trial court did not err in refusing to give the instruction as written, it should not have refused to tailor the instruction to the facts of this case." (*Hall, supra,* at p. 159; see also *People v. Pena* (1983) 149 Cal.App.3d Supp. 14, 28, fn. 17 [197 Cal.Rptr. 264].)

*Hall,* while finding the refusal to give the defendant's proposed instruction was error, held the error was not prejudicial because modified versions of CALJIC Nos. 2.91 and 2.20 adequately addressed the circumstances of that case. However, the Supreme Court said: "In the future, the trial court should consider and give appropriate instructions involving reasonable doubt and eyewitness identification." (*People v. Hall, supra,* 28 Cal.3d 143, 159-160.)

The People cite several cases holding the trial court's failure to give a defendant's proposed eyewitness instruction to be harmless error, or no

---

[7]Palmer is black. While the record does not identify each witness by race, it appears four of them were not black. If in fact all six of the witnesses are black, it will be proper on retrial for the trial court to refuse to instruct the jury on cross-racial identification.

error, where CALJIC Nos. 2.20 and 2.91 are given. Three of these—*People v. Vindiola* (1979) 96 Cal.App.3d 370 [158 Cal.Rptr. 6], *People v. Kelley* (1977) 75 Cal.App.3d 672 [142 Cal.Rptr. 457], and *People v. Boothe* (1977) 65 Cal.App.3d 685 [135 Cal.Rptr. 570]—were decided before *People v. Hall, supra,* 28 Cal.3d 143. *Vindiola* merely held CALJIC Nos. 2.20 and 2.91 were sufficient "[i]n the absence of a definitive holding by the Supreme Court . . . ." (*Vindiola, supra,* at p. 386.) The Supreme Court supplied a definitive holding in *People v. Hall, supra,* 28 Cal.3d 143.

Cases relied upon by the People are distinguishable. In *People v. Lybrand* (1981) 115 Cal.App.3d 1 [171 Cal.Rptr. 157], the court held there was no error in refusing to give the requested instruction solely because the *Hall* holding is explicitly prospective. (*Lybrand,* at p. 13.) Palmer's trial was conducted after *Hall.*

*People v. Blair* (1979) 25 Cal.3d 640, 663 [159 Cal.Rptr. 818, 602 P.2d 738], only held the trial court need not give a *Guzman*-type instruction *sua sponte,* an inapposite holding here where the instruction was specifically requested.

The recent case of *People v. West* (1983) 139 Cal.App.3d 606 [189 Cal.Rptr. 36] held the failure of the trial court to give the defendant's proposed eyewitness identification instruction was reversible error, although the trial court had given CALJIC Nos. 2.20 and 2.91. ■ As *West* explained: "Whether an error is harmless or not depends on the particular facts of each case and on the specific instruction refused. Here, the proposed instruction mentioned several factors relevant to this case which are not mentioned in the standard instructions. The evidence on identification was conflicting. Because identification was the sole issue in this case, the error cannot be deemed harmless." (*People v. West, supra,* 139 Cal.App.3d 606, 610.) *West* correctly states the circumstances here.

■ Here, of the six "positive" in-court identifications, only one was preceded by an unequivocal photo-lineup identification. His adherence to a firm belief in the correctness of identification may be because he is in fact correct, or it may simply reflect the human trait recognized by the Supreme Court in *United States v. Wade* (1967) 388 U.S. 218, 229 [18 L.Ed.2d 1149, 1158-1159, 87 S.Ct. 1926], that one who picks an accused out of a lineup is not likely to be persuaded he or she was mistaken.

All other firm identifications here were made during a one-on-one viewing in court. In referring to the vice where a suspect/accused is presented to a witness singly, *Wade* (at p. 234 [18 L.Ed.2d at p. 1161]) states: "It is hard to imagine a situation more clearly conveying the suggestion to the witness

that the one presented is believed guilty by the police." The suggestion is conveyed to the witness even more clearly when that person knows not only that the person presented is a suspect but that he/she has been formally arrested, accused and brought to court after being identified by others. If a one-on-one identification where the as yet unaccused suspect is exhibited in the custody of police officers is suggestive, then an accused defendant in the dock presents the witness with an even more suggestive atmosphere, where, under the critical eye of the trier of fact and prosecutor, he or she may well feel compelled to identify the defendant on trial.

■ We do not suggest that an in-court identification of a person clearly identified as a criminal defendant accused of the crime of which the witness was a victim violates due process, even though the defendant be the only person of his or her race in the courtroom. We do suggest, however, that any one-on-one confrontation is inherently suggestive. (See also *Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].) The reliability of these in-court identifications should be evaluated in light of the psychological influences inherent in being asked to identify the only black person in the courtroom, under the direct prompting of the district attorney and subject to the stares of 12 persons "tried and true" sitting in the jury box. It is these jurors, as the trier of fact, to whom the instructions are directed. Here, the argument is not one of due process, but of the jurors being advised by the court what factors are relevant in evaluating the accuracy of eyewitness identification, the fact that some of these eyewitness identifications were made for the first time in court, and being told what relevant factors shown by the evidence were pertinent to their evaluation of identification reliability.

■ We are not persuaded that mere multiplicity of concurring eyewitnesses necessarily makes the instructional error here, harmless. Four witnesses identified the defendant at trial in *People v. Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569]. Stating that both it, and the United States Supreme Court have recognized eyewitness identifications often are unreliable, it found the multiple cross-cultural identifications of an armed robber to be entitled to little independent weight in determining the issue of harmless error.[8] (*Id.*, at pp. 907-910; see also *United States* v. *Hodges* (7th Cir. 1975) 515 F.2d 650, three positive eyewitnesses plus the arresting officer; and *People* v. *Roberts, supra*, 256 Cal.App.2d 488, 491.) We are particularly sensitive to the fact that the only evidence of Palmer's complicity, direct or circumstantial, is the eyewitness testimony and that

---

[8]Quoting Justice Frankfurter: " 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is proverbially unworthy,' " as quoted in *United States* v. *Wade, supra*, 388 U.S. 218, 228 [18 L.Ed.2d 1149, 1158].

the testimony of each eyewitness must be evaluated and judged separately. ■ In the interest of justice, he is entitled to have the jurors judicially instructed, at his request, that the law requires they evaluate the testimony of each eyewitness by factors specifically relevant to the circumstances under which identification was made. In the absence of such an instruction, we find a substantial likelihood a juror would tend not to indulge in individual credibility analyses, but simply count the number of witnesses.

Because of the very positiveness with which eyewitness identifications are presented they are often given undue weight by jurors, against which even a combination of cross-examination and summation of counsel cannot protect a defendant from the dangers of misidentification in the absence of instructions such as those denied here. (See *United States* v. *Hodges, supra,* 515 F.2d 650, 653; also *United States* v. *Telfaire* (D.C. Cir. 1972) 469 F.2d 552.)

■ As in *West,* identification is the only issue in dispute. The evidence of the silver brace on Palmer's teeth, and the inability of witnesses to identify him from lineups, the inherent suggestibility of in-court identifications coupled with problems of cross-racial identification, raise substantial fact issues for jury resolution. ■ ■■■ Here, the eyewitnesses' identifications were made by persons not shown to have special expertise in identification, and there was no independent corroborating evidence.[9] ■ On this record, we cannot say it is not reasonably probable, had the jury's attention been properly directed to all relevant factors, a result more favorable to Palmer would not have been obtained. (Cf. *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Palmer's proposed instruction is unfortunately somewhat general in language. However, it is far better attuned to alerting the jurors to factors particularly relevant to evaluating credibility of eyewitness identifications in this case than the bland generalizations of the instructions given.

---

[9]Palmer also contends the trial court reversibly erred in refusing to allow his attorney, in closing argument, to refer to newspaper articles and other cases on the issue of identification. If this material dealt with matters of common knowledge, or relevant opinions of judges or legal scholars, she should have been allowed to use it. (See generally, *People* v. *Travis* (1954) 129 Cal.App.2d 29 [276 P.2d 193].) For the guidance of the court on retrial we refer to *People* v. *West, supra,* 139 Cal.App.3d 606, 610-611, where the court stated: "whether a particular newspaper or magazine article should be read to the jury, is a matter that is addressed to the sound discretion of the trial court. [¶] In exercising that discretion, the trial court should read the newspaper article and consider whether it relates to matters of common knowledge or substantiated illustrations of common experience, whether the article is relevant to the case and whether the article may confuse the issues in the case." (*Id.,* at p. 611.) On retrial, the court should take a liberal posture toward counsel's right to argue her case as eloquently and persuasively as possible (*People* v. *Travis, supra,* 129 Cal.App.2d 29).

We do not reach Palmer's contention he was improperly sentenced.

*Disposition*:

Reversed.

Wiener, Acting P. J., and Butler, J., concurred.

A petition for a rehearing was denied April 5, 1984, and respondent's petition for a hearing by the Supreme Court was denied May 31, 1984. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.