163 Cal.App.3d 1001 (1985)
209 Cal. Rptr. 883
THE PEOPLE, Plaintiff and Respondent,
v.
MICHELLE DENISE HENDERSON, Defendant and Appellant.
Docket No. 16014.
Court of Appeals of California, Fourth District, Division Two.
January 22, 1985.
*1006 COUNSEL
Robison D. Harley, Jr., under appointment by the Court of Appeal, and Cohen, Stokke & Davis for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Jay M. Bloom and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
MORRIS, P.J.
Defendant Michelle Denise Henderson was convicted by jury of robbery (Pen. Code, § 211) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(2)). Sentence on the robbery conviction was enhanced for committing the felony while armed with a firearm (Pen. Code, § 12022, subd. (a)). Defendant was acquitted of attempted murder. (Pen. Code, § 187.)
On appeal the defendant contends that the trial court erred in that: (1) the aiding and abetting jury instruction given failed to insure a finding of specific *1007 intent, (2) the defendant was consecutively sentenced on two legally indivisible crimes, (3) a special jury instruction that specified factors to be considered in deciding whether reasonable doubt as to identity existed was rejected, (4) defendant was prejudicially cross-examined about her presence at a burglary to which her alibi witness pleaded guilty, and (5) relevant details about the prior conviction of a defense witness and evidence about other robberies in which the witness was allegedly involved were excluded.

FACTS
On July 30, 1982, Karl Sunderland had withdrawn about $500 from a bank in Sun City and was driving home to Perris. The money was in a tote bag on the floor of the passenger side of the car. While he was driving a car bumped into the rear of his car three separate times. Mr. Sunderland and the car that had bumped him pulled over. Mr. Sunderland went to the back of his car, where he met the woman who was driving the other car, later identified as the defendant. He asked to see her driver's license, but she asked to see his first. Mr. Sunderland then leaned down to look at the license plate on her car.
At that point the passenger door of her car opened and a black male exited holding a sawed-off shotgun. The man demanded Mr. Sunderland's money. He then began striking Mr. Sunderland on the head with the shotgun. Mr. Sunderland was struck down but managed to get up a number of times when the woman started screaming, "Come on, come on, the traffic is coming." The second assailant then went directly to the passenger side of Mr. Sunderland's car, obtained the tote bag containing the money, shot into Mr. Sunderland's car, and then retreated to his own car.
Mr. and Mrs. Karo drove by during the commission of these offenses, and saw Mr. Sunderland being assaulted. Mr. Karo slowed down to about 20 miles per hour as they passed Mr. Sunderland. Mrs. Karo, a teacher and substitute principal, saw the woman driver of the assailant's car face on from the nose up as they drove by. Shortly thereafter, this car pulled out behind, and then passed the Karos' car on the driver's side. Mrs. Karo observed the woman driver again during these maneuvers. Mr. Karo noted the license number of the car and gave the number to the police.
Both Mr. Sunderland and Mrs. Karo identified defendant as the woman who drove the car involved in the offenses. Mr. Sunderland was not able to identify defendant in a photo lineup shortly after the four- to five-day hospital stay his head injuries required, but he did identify her at the preliminary hearing and at trial. Mrs. Karo first told a detective she knew only that the driver was a white woman, but when first shown a photo lineup a couple of *1008 months after the crime she identified the defendant as the driver. She also identified the defendant at the preliminary hearing and at trial.
At trial the defense theory was that Mr. Sunderland and Mrs. Karo were mistaken in their identifications of the defendant, that defendant was at a park with a boyfriend, Gary Thompson, during the commission of the crime, and that another woman, Karen Cromartie, was actually the woman driver they had seen. Karen Cromartie and the defendant were similar in appearance, and at the time of the offenses Mr. Sunderland had not noticed a tattoo on the upper chest of the defendant. Also, Karen Cromartie owned a floral dress similar to the one the woman driver was wearing during the commission of the crime. Nevertheless, Mr. Sunderland and Mrs. Karo did not identify Karen Cromartie in the photo lineups and, despite the opportunity, Mrs. Karo did not identify Karen Cromartie at the trial. Karen Cromartie was the owner of the car used in the crime, but defendant lived with Karen Cromartie on and off during July 1982 and had access to the extra set of car keys that Karen Cromartie kept in her apartment.

DISCUSSION

I.
(1a), (2a) Defendant contends the trial court committed reversible error in incorrectly instructing the jury on aiding and abetting. We agree that the jury instruction was erroneous. We find the error harmless as to the conviction for robbery (Pen. Code, § 211), but reverse the conviction for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(2)).
There is no doubt that the aiding and abetting instruction read to the jury was erroneous under People v. Beeman (1984) 35 Cal.3d 547, 560 [199 Cal. Rptr. 60, 674 P.2d 1318]. The Supreme Court stated that the modified version of CALJIC No. 3.01 (1980 rev.) used in the instant case[1] was "... sufficiently ambiguous to conceivably permit conviction upon a finding of an intentional act which aids, without necessarily requiring a finding of an intent to encourage or facilitate the criminal offense." (Id., at p. 561.)[2]
*1009 (3) Respondent contends that Beeman is distinguishable because there, unlike here, the defendant requested that the erroneous instruction be modified. Respondent cites no authority that an alternative instruction must be proffered or that an objection must be made before the issue may be raised on appeal. Penal Code section 1259 states that an "... appellate court may... review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (See People v. Satchell (1971) 6 Cal.3d 28, 33, fn. 10 [98 Cal. Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383].)
(4a) Respondent also contends that even if otherwise applicable, Beeman, a 1984 decision, cannot be applied retroactively to the trial here, which was in April 1983. We disagree.
(5) Generally, Supreme Court decisions are retroactive, prospectivity is the exception. (Donaldson v. Superior Court (1983) 35 Cal.3d 24, 37 [196 Cal. Rptr. 704, 672 P.2d 110]; Traynor, Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility (1977) 28 Hastings L.J. 533, 534.) (6) "In determining whether a decision should be given retroactive effect, the California courts undertake first a threshold inquiry, inquiring whether the decision established new standards or a new rule of law. If it does not establish a new rule or standard, but only elucidates and enforces prior law, no question of retroactivity arises." (Donaldson v. Superior Court, supra, at p. 36.) (7) A decision that resolves a conflict between lower court decisions is presumptively retroactive. (Id. at p. 37.)
(4b) Here, retroactivity should apply because in Beeman the Supreme Court resolved a conflict among appellate decisions. One line of cases, of which Yarber is a leading example, stated that an aider and abettor must have an intent or purpose to commit or assist in the commission of the criminal offenses. (See, e.g., People v. Yarber, supra, 90 Cal. App.3d at pp. 914-916; People v. Petty (1981) 127 Cal. App.3d 255, 263 [179 Cal. Rptr. 413].) Another line of cases held it sufficient that the aider and abettor engage in the required acts with knowledge of the perpetrator's main purpose. (See, e.g., People v. Ott (1978) 84 Cal. App.3d 118, 129 [148 Cal. Rptr. 479]; People v. Standifer (1974) 38 Cal. App.3d 733, 743 [113 Cal. Rptr. 653].) Essentially, Beeman held that, consistent with Yarber and the "weight of accepted authority," an "... aider and abettor must have criminal intent in order to be convicted of a criminal offense." (People v. Beeman, supra, 35 Cal.3d at pp. 556-557.)
The Supreme Court went on to explain that the Yarber instruction on aiding and abetting, although it sought to include the required intent element, *1010 was ambiguous. (Id., at p. 561.) This was not a "clear break with the past." (Desist v. United States (1969) 394 U.S. 244, 248 [22 L.Ed.2d 248, 254, 89 S.Ct. 1030]; see United States v. Johnson (1982) 457 U.S. 537 [73 L.Ed.2d 202, 102 S.Ct. 2579].) We conclude that the Beeman decision is retroactive to the instant case at the threshold level. (See People v. Tovar (1984) 161 Cal. App.3d 137 [207 Cal. Rptr. 255].)
(1b), (2b) Defendant contends that the ambiguous and therefore erroneous jury instruction here deprived her of due process, and that the judgment should be reversible per se.
Beeman did not decide the appropriate standard of review, because it found reversible error under the most lenient standard, People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (People v. Beeman, supra, 35 Cal.3d at p. 563), but People v. Garcia (1984) 36 Cal.3d 539 [205 Cal. Rptr. 265, 684 P.2d 826] has since provided an analytical basis for determining what standard of review is appropriate. (8a) Garcia held that "... any instruction or failure to instruct which would permit the state to circumvent the requirement that it prove every fact necessary for conviction beyond a reasonable doubt ... constitute[s] a denial of due process." (Id., at p. 551.) Moreover, such a denial of due process is reversible error per se unless an exception applies. (Id., at pp. 554-555; see Connecticut v. Johnson (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969]; Sandstrom v. Montana (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450]; People v. Ford (1964) 60 Cal.2d 772, 792-793 [36 Cal. Rptr. 620, 385 P.2d 892]; People v. Banks (1983) 147 Cal. App.3d 360, 367 [195 Cal. Rptr. 101].)
(1c), (2c) Applying the Garcia analysis to this case, we find that one of the Garcia exceptions applies to the conviction for robbery (Pen. Code, § 211) but not to the conviction for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(2)). (8b) Garcia held that reversal per se was not appropriate "... where the parties recognized that intent ... was in issue, presented all evidence at their command on that issue, and ... the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration." (People v. Garcia, supra, 36 Cal.3d at p. 556, fn. omitted.)[3]
(1d) In the instant case the use of the Yarber instruction, which was originally devised in an attempt to add the concept of specific intent to *1011 CALJIC No. 3.01, was tantamount to a recognition by the parties that intent was an issue. Therefore, although defendant relied on an alibi defense, presumably all evidence at her command on the issue of intent was also presented. Finally, the record amply supports the conclusion that defendant knowingly and intentionally encouraged and facilitated the commission of the robbery as a matter of law. Mr. Sunderland testified that the defendant saw him acquire money and put it in a tote bag at the bank. There was no conflicting evidence that the woman driving the car later bumped into the rear of the victim's car three times. The assailant demanded money before attacking Mr. Sunderland. The woman then screamed at the assailant to "Come on" because traffic was coming and drove away from the scene once the assailant returned to the car with the stolen money. Moreover, there was no contrary evidence worthy of consideration with respect to the robbery. The error here does not require reversal of the robbery conviction.
(2d) In contrast, the record does not establish that the defendant had specific intent to aid and abet the assault with a deadly weapon as a matter of law. (9) Independent and specific intent to aid and abet the separate offense of assault was required to convict the defendant of that offense. (See People v. Beeman, supra, 35 Cal.3d at p. 560; People v. Laster (1971) 18 Cal. App.3d 381, 388-389 [96 Cal. Rptr. 108]; 1 Witkin, Cal. Crimes (1963) Evidence and Instructions, § 56, p. 61.)[4]
(2e) In fact, it is reasonably probable that the jury would not have found that the defendant intended to aid and abet the assault of Mr. Sunderland if they had been unambiguously instructed on the requirement that an aider and abettor have specific intent. (See People v. Watson, supra, 46 Cal.2d at p. 836.) Indeed, defendant caused the male assailant to quit beating Mr. Sunderland on the head by screaming "Come on" a number of times. In contrast, she stopped screaming when the assailant went to the side of the car to steal the money. In this context, the long jury deliberations, the request for jury instructions on reasonable doubt, and the acquittal of defendant on attempted murder charges are significant. The conviction for assault with a deadly weapon must be reversed.

II.
(10a), (11a) Defendant contends that the trial court committed reversible error in refusing to give a special jury instruction relating the identification *1012 of defendant to reasonable doubt. We hold that the court properly refused the instruction and, in any event, no prejudice resulted.
(10b) The reasonable doubt instruction requested was redundant and argumentative. (See People v. Hall (1980) 28 Cal.3d 143, 159 [167 Cal. Rptr. 844, 616 P.2d 826]; People v. Guzman (1975) 47 Cal. App.3d 380, 386 [121 Cal. Rptr. 69].) It was nothing more than a comment on the evidence; such a comment should not be limited to the specific areas and language selected by the defendant. (People v. Watson (1979) 89 Cal. App.3d 376, 386-387 [152 Cal. Rptr. 471]; People v. Castellano (1978) 79 Cal. App.3d 844, 857-858 [145 Cal. Rptr. 264]; People v. Smith (1977) 67 Cal. App.3d 45, 49 [136 Cal. Rptr. 387].)
It is true that a defendant is entitled to an instruction relating particular facts to any legal issue, including reasonable doubt (People v. Sears (1970) 2 Cal.3d 180, 190 [84 Cal. Rptr. 711, 465 P.2d 847]), and it is error to refuse to correct an instruction on reasonable doubt simply because it is too long and argumentative (People v. Hall, supra, 28 Cal.3d at p. 159).
Nevertheless, it was not error to simply reject the instruction in this case because if corrected it would have essentially duplicated the reasonably specific instructions on reasonable doubt that were given.
(11b) Assuming arguendo that the trial court erred in refusing to tailor the proposed instruction, based on the particular facts of this case (cf. People v. West (1983) 139 Cal. App.3d 606, 610 [189 Cal. Rptr. 36]), it is not reasonably probable that a result more favorable to the defendant would have been reached absent that error (People v. Watson, supra, 46 Cal.2d at p. 836). CALJIC Nos. 2.20 (1980 rev.) and 2.91 (1982 rev.) and other instructions written by defendant on the relationship of reasonable doubt to the eyewitness testimony of Mr. Sunderland and Mrs. Karo were given. (See People v. Hall, supra, 28 Cal.3d at p. 159; People v. Yeats (1984) 150 Cal. App.3d 983, 992 [198 Cal. Rptr. 268].) In addition, defense counsel thoroughly covered the refused instruction in his closing argument. (See People v. Brown (1984) 152 Cal. App.3d 674, 678 [199 Cal. Rptr. 680].) Finally, the eyewitness testimony was strong. Mr. Sunderland, the victim, got a good look at the defendant. His identification was corroborated by Mrs. Karo, a school teacher accustomed to quickly identifying students, and by the fact that the defendant had access to the automobile used. (Cf. People v. Palmer (1984) 154 Cal. App.3d 79, 89 [203 Cal. Rptr. 474]; People v. Coates (1984) 152 Cal. App.3d 665, 671 [199 Cal. Rptr. 675]; People v. West, supra, 139 Cal. App.3d at p. 610.)
It is true identity was the sole issue (see People v. Bustamante (1981) 30 Cal.3d 88, 101 [177 Cal. Rptr. 576, 634 P.2d 927]; People v. Palmer, *1013 supra, 154 Cal. App.3d at p. 86; People v. West, supra, 139 Cal. App.3d at p. 610), and minor memory problems and discrepancies in the identifications by the eyewitnesses existed (see People v. Coates, supra, 152 Cal. App.3d at pp. 671-672). Nevertheless, considering the overall strength of the evidence, these factors are insufficient to constitute reversible error.

III.
(12) Defendant contends that it was reversible error for the trial court to permit the defendant to be cross-examined about her presence at the scene of a burglary on August 3, 1982, to which her alibi witness, Gary Thompson, pleaded guilty. We disagree.
Actually, both defendant and Gary Thompson were cross-examined about statements they made that indicated they did not know each other when confronted by police immediately after the August 3, 1982, burglary. In both cases direct examination had established that the defendant and Gary Thompson knew each other prior to August 3, 1982.
"Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his [or her] testimony at the hearing, including but not limited to ... (h) [a] statement made by him [or her] that is inconsistent with any part of his [or her] testimony at the hearing." (Evid. Code, § 780.) Evidence Code section 787, which states that "... evidence of specific instances of ... conduct relevant only as tending to prove a trait of ... character is inadmissible to attack or support the credibility of a witness," is not a bar to testimony elicited pursuant to Evidence Code section 780. (People v. Reyes (1976) 62 Cal. App.3d 53, 62 [132 Cal. Rptr. 848].)
Assuming arguendo that an error was made, it was harmless under People v. Watson, supra, 46 Cal.2d at page 836.

IV.
(13a), (14a) Defendant contends that the trial court erred in not admitting details of the prior felony conviction of Karen Cromartie, and in not *1014 admitting evidence of other recent robberies that she or her automobile were possibly connected to. We disagree.
(13b) The prior felony conviction of Karen Cromartie and the nature of that conviction were admitted for impeachment purposes pursuant to California Constitution, article I, section 28, subdivision (f).[5] Notwithstanding subdivision (f), further details of a conviction are inadmissible for impeachment purposes. (See People v. McClellan (1969) 71 Cal.2d 793, 809 [80 Cal. Rptr. 31, 457 P.2d 871]; People v. David (1939) 12 Cal.2d 639, 646 [86 P.2d 811].)
The defendant argues, however, that the details of the prior felony conviction should have been admitted to show that Karen Cromartie had manifested a modus operandi and criminal intent similar to the instant offenses. The prior felony conviction of Karen Cromartie was in 1973, for voluntary manslaughter. She testified outside the presence of the jury that in 1973 she had contacted an older man on the street at the request of three black associates. These accomplices thereafter attacked the victim, killing him with a bumper jack, and robbed him.
The trial judge excluded this evidence pursuant to Evidence Code section 352, because it was too remote, unduly prejudicial, and time consuming. This was a proper ruling. In addition, because the 1973 felony was in many ways dissimilar to the instant offense, the evidence was inadmissible character evidence pursuant to Evidence Code section 1101, subdivision (a). (See People v. Thompson (1980) 27 Cal.3d 303, 316 [165 Cal. Rptr. 289, 611 P.2d 883]; cf. People v. Barney (1983) 143 Cal. App.3d 490, 496 [192 Cal. Rptr. 172].)
(14b) The defendant's contention that the trial judge should have admitted evidence of other recent robberies of credit cards and convenience markets, none of which Karen Cromartie was charged with, is also without merit. The proffered testimony was properly excluded pursuant to the rules against hearsay (Evid. Code, § 1200) and character evidence (Evid. Code, § 1101, subd. (a)).

*1015 DISPOSITION
The judgment is affirmed as to the conviction for robbery. (Pen. Code, § 211.) The judgment is reversed as to the conviction for assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(2).)
Kaufman, J., and McDaniel, J., concurred.
The petitions of both parties for a hearing by the Supreme Court were denied March 21, 1985.
NOTES
[1] The trial court defined aiding and abetting, consistent with the modification of CALJIC No. 3.01 recommended in People v. Yarber (1979) 90 Cal. App.3d 895, 916 [153 Cal. Rptr. 875], as follows: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he intentionally aids, promotes, encourages or instigates by act or advice the commission of such crime." (Italics added.)
[2] Beeman held that an appropriate aiding and abetting instruction should inform the jury that the defendant, by act or advice, must have aided, promoted, encouraged or instigated the commission of the crime with (1) knowledge of the unlawful purpose of the perpetrator, and (2) the intent to commit, encourage or facilitate the commission of the offense. (People v. Beeman, supra, 35 Cal.3d at p. 561.)
[3] In Garcia the California Supreme Court expressed "uncertainty" over whether the United States Supreme Court would sanction even a limited exception to the reversal per se standard for instructional error that would deny due process. (People v. Garcia, supra, 36 Cal.3d at p. 556.) Accordingly, the court emphasized that the exception discussed therein should be applied "... only to those cases clearly falling within the ambit of [its] reasoning so as not to detract substantially from the per se character of the high court's rule." (Id.)
[4] The assault conviction would be proper if the assault was merely a means to achieve the robbery, and therefore incidental and indivisible from the robbery, but the conviction would then have to be stayed pursuant to Penal Code section 654. (People v. Miller (1977) 18 Cal.3d 873, 885 [135 Cal. Rptr. 654, 558 P.2d 552]; People v. Logan (1953) 41 Cal.2d 279, 290 [260 P.2d 20].)
[5] Subdivision (f) states that: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (f).)