STATE of North Dakota, Plaintiff
and Appellee,

v.

Jeff Allen PADGETT, Defendant
and Appellant.

Cr. No. 1202.

Supreme Court of North Dakota.

July 28, 1987.

Owen K. Mehrer, States Atty., Dickinson, for plaintiff and appellee.

William Heth, Dickinson, for defendant and appellant.

LEVINE, Justice.

Jeff Allen Padgett appeals from a judgment of conviction entered on a jury verdict finding him guilty of two class B felony counts of delivery of a controlled substance in violation of § 19–03.1–23(1)(b), N.D.C.C. We affirm.

On October 9, 1985, Padgett was charged with two counts of delivering marijuana to Gene Hondl on November 15 and December 26, 1984 at DJ's Bar in Dickinson. The evidence, viewed in the light most favorable to the verdict, reflects that on both occasions North Dakota Drug Enforcement Agent Cindy Graff met Hondl at the bar to buy the marijuana and they waited for Padgett to arrive. When Padgett arrived, Graff gave Hondl money for the purchase and Hondl and Padgett went into the bath-

room where the delivery was made. When Hondl and Padgett came out of the bathroom, Hondl delivered the marijuana to Graff.

In September 1985, Hondl was convicted of delivery of a controlled substance, pleading guilty to having delivered to Graff the marijuana he received from Padgett. Pursuant to the plea agreement, the imposition of Hondl's sentence was suspended for four years upon his compliance with certain conditions, including supervised probation. One of the conditions was that Hondl "shall actively and cooperatively assist Stark County and the State of North Dakota in the prosecution of any other offenses arising out of incidents occurring on November 15 and December 26, 1984." However, on May 20, 1986, prior to Padgett's trial, Hondl's probation was revoked for violation of other conditions and he was incarcerated at the time of trial.

Hondl and Graff testified for the prosecution at Padgett's trial. Padgett took the stand and testified that he did not sell the marijuana to Hondl on either occasion. The jury returned verdicts of guilty on both counts and Padgett was sentenced to serve two years in the State Penitentiary. Padgett has appealed.

Padgett first asserts that he was prejudiced by the State's delay in commencing prosecution. The offenses were alleged to have occurred in November and December 1984. Padgett was formally charged in October 1985. Padgett claims that the delay prejudiced him because he was "unable to remember where he was or even where he lived" at the time of the offenses.

█ Preaccusatorial delay raises a claim under the due process clauses of the fifth and fourteenth amendments rather than under the sixth amendment's guarantee of a speedy trial. *State v. Denny*, 351 N.W.2d 102, 104 (N.D.1984). In *Denny, supra*, we set forth the following criteria for resolving issues of prejudicial delay between the alleged offense and arrest:

"(1) proof of actual prejudice is generally a necessary, but not in itself sufficient, element of such a claim; (2) the amount of delay alone does not establish prejudice per se; (3) legitimate investigative delay, 'if not stretched to the breaking point,' does not deprive a defendant of due process, even if his defense might have been somewhat prejudiced by the lapse of time; and (4) due process does not condone a state's intentional delay for the purpose of obtaining an advantage over the defendant if the delay will cause prejudice to the defendant's right to a fair trial.

"The resolution of a due process claim based on preaccusatorial delay requires a balancing of the reasonableness of the delay against the prejudice to the accused."

*See also State v. Weisz*, 356 N.W.2d 462 (N.D.1984); *State v. Denny*, 350 N.W.2d 25 (N.D.1984).

█ In this case, approximately eleven months elapsed between the alleged offenses and the formal charges. According to Graff, there was an undercover operation proceeding in the area at the time and the delay was attributable to concern for protecting the identity of the undercover agent. Nothing in this record establishes an intentional delay for the purpose of obtaining an advantage over Padgett. The charges were filed well within the three-year statute of limitation period [*see* § 29-04-02, N.D.C.C.], and the record does not establish that the delay unduly impaired Padgett's defense. Balancing the reasonableness of the delay against any prejudice that Padgett might have incurred, we conclude that Padgett's due process rights were not violated by the delay in this case.

█ Padgett also asserts that his right to a speedy trial was violated. His trial did not take place until June 1986, almost eight months after he was formally charged with the offenses. The basic factors considered in determining whether the right to a speedy trial has been denied include the length of the delay, the reason for the delay, the assertion of the right by the defendant, and prejudice to the defendant. *State v. Presbuch*, 366 N.W.2d 794, 795 (N.D.1985). A defendant can waive his right to a speedy trial by failing to demand

a prompt trial or by expressly consenting to the delay. *State v. Wunderlich,* 338 N.W.2d 658, 661 (N.D.1983).

■ Padgett's preliminary hearing was held on November 14, 1985 and he was arraigned in district court on December 16, 1985. Padgett's trial was originally scheduled for March 16, 1986, but on January 30, 1986, his attorney moved to withdraw as counsel because Padgett wanted a different attorney. The court appointed a different attorney for Padgett, and that attorney moved for a continuance one week before trial. Padgett expressly consented by affidavit to a 60–day extension of time for trial. The case was then scheduled as a back-up trial for April 29, 1986, but the primary case was tried. The case was again rescheduled, without objection from Padgett, and was tried on June 3 and 4, 1986. Under these circumstances, where much of the delay was attributable to Padgett, we conclude that Padgett's right to a speedy trial was not violated.

Padgett asserts that the trial court erred in allowing the State to introduce evidence of Hondl's conviction for delivery of a controlled substance because that conviction arose out of the same circumstances for which he was being tried. During the prosecution's direct examination of Hondl, the following exchange took place:

"Q [By Mr. Mehrer] Okay. Now, you were charged with the offense of delivery of a controlled substance, were you not?

"A [By Mr. Hondl] Yes, sir.

"Q And you were convicted of it, were you not?

"A Yes."

During closing arguments, the prosecutor further stated:

"In order to believe that it simply never happened at all, you have to imagine the world is some sort of massive conspiracy between a convict—a person who [sic] convicted of delivery of controlled substances, a drug agent, ..."

1. Although Hondl and Padgett are not "co-defendants" in the literal sense of the term, the same rationale applies when two persons are charged with separate offenses growing out of

■ It is well established that the guilty plea or conviction of a co-defendant [1] may not be used as substantive evidence of another's guilt. *E.g., United States v. Davis,* 766 F.2d 1452, 1456 (10th Cir.), *cert. denied,* 474 U.S. 908, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985); 2 Weinstein's Evidence ¶ 410[07] (1986); Annot., 48 A.L.R.2d 1016 (1956). If the co-defendant testifies, however, either the prosecution or defense may elicit evidence of the guilty plea or conviction for the jury to consider in assessing the co-defendant's credibility as a witness, or to show his acknowledgement of participation in the offense. *See United States v. Smith,* 790 F.2d 789, 793 (9th Cir.1986); *United States v. Roth,* 736 F.2d 1222, 1226 (8th Cir.), *cert. denied,* 469 U.S. 1058, 105 S.Ct. 541, 83 L.Ed.2d 429 (1984); *United States v. Wiesle,* 542 F.2d 61, 62 (8th Cir. 1976); *Gerberding v. United States,* 471 F.2d 55, 60 (8th Cir.1973). In such circumstances, the trial judge should instruct the jury that the evidence of the co-defendant's guilty plea or conviction is received for these purposes alone, and that it cannot form the basis of any inference of the guilt of the defendant. *See Davis, supra; Roth, supra; Wiesle, supra.*

■ In this case, Padgett did not object to the admission of Hondl's testimony or to the prosecutor's comment during closing argument. Nor did he request a cautionary, limiting instruction. Consequently, our inquiry is limited to determining whether the alleged error constitutes an obvious error which affects substantial rights of the defendant. Rule 52(b), N.D.R.Crim.P.; *see State v. Saavedra,* 406 N.W.2d 667, 673 (N.D.1987). Under the circumstances of this case, we conclude that it does not.

■ It is apparent from the record that the prosecutor elicited the evidence of Hondl's conviction not for the purpose of constituting substantive evidence of Padgett's guilt, but for the purpose of laying the groundwork for showing that Hondl's

the same circumstances. *See Kwallek v. State,* 596 P.2d 1372, 1375 (Wyo.1979). We use the term "co-defendant" to facilitate our discussion.

memory of the specific details of the delivery may have eroded.[2] Graff testified that the delivery of the marijuana between Padgett and Hondl occurred in the bathroom of the bar on both occasions. However, Hondl testified that the November 15 delivery took place at Padgett's apartment above the bar. The prosecutor's brief mention of Hondl's conviction during closing arguments also was made in relation to witness credibility. A reading of the record does not indicate that the prosecutor unduly emphasized Hondl's conviction or used it as substantive evidence of Padgett's guilt.

■ Although the trial court instructed the jury that "[a] witness ... may be impeached ... by evidence that he has been convicted of a crime ...", no specific cautionary instruction on the permissible uses of Hondl's conviction was given. However, a trial court's failure to give such an instruction, where the defendant neither requested the instruction nor objected to its absence, does not constitute per se reversible error. *See Davis, supra; United States v. Renton,* 700 F.2d 154, 160 (5th Cir.1983). In light of the extensive evidence of Padgett's guilt, the absence of any request for the instruction, and the lack of emphasis placed on the evidence of Hondl's conviction, we cannot say that the trial court's failure to give the cautionary instruction sua sponte constitutes obvious error affecting Padgett's substantial rights. *See Roth, supra; Wiesle, supra; Gerberding, supra.*

Padgett asserts that the trial court erred in limiting his cross-examination of Hondl. During the trial, the following exchange took place:

"CROSS EXAMINATION:
"BY MR. HETH:
"Q With reference to the November 15 date, prior to that date, were you in the business of selling marijuana?
"MR. MEHRER: Objection. Approach the bench.
"THE COURT: Yes, you may.
"[At the bench; both counsel present; out of the hearing of the jury.]
"THE COURT: Briefly, just briefly, state your objection first and we'll find out where he's—
"MR. MEHRER: Improper impeachment. Prior bad acts not amounting to a felony.
"MR. HETH: My question was whether he's involved in selling drugs prior to November 15.
"MR. MEHRER: I think it's an irrelevant matter. That's improper impeachment.
"THE COURT: Are you going any place special with this?
"MR. HETH: Just wanted to know if he had been involved prior to that. It wouldn't only proceed—
"MR. MEHRER: Of course, he's trying to impeach the witness's credibility and you can't do it.
"THE COURT: Well, why don't you just let me rule? I mean, I've heard both of the arguments now. I'm going to sustain the objection."

■ Although the opportunity to cross-examine a witness is the primary mode to safeguard the sixth amendment right of confrontation, the scope of cross-examination is necessarily a matter involving the trial court's discretion. *State v. Buckley,* 325 N.W.2d 169, 171–172 (N.D.

---

2. Following Hondl's testimony that he had been convicted of delivering a controlled substance, the following exchange took place:

"Q [By Mr. Mehrer] Gene, you weren't charged with that offense until some time after November of [sic] December 1984, were you?
"A [By Mr. Hondl] Right.
"Q In fact, wasn't that in the spring of 1985?
"A Yes.

"Q In between December 26 '84 and when the charges were filed against you, did you give these transactions a lot of thought?
"A Yes, sir.
"Q Well, did you make particular pains to remember exactly what was said and done on these two days? You didn't know you were being charged with anything, did you?
"A No.
"Q And, in fact, won't it be true that you probably gave those deliveries very little thought until you were charged?
"A Right."

1982); *State v. Bartkowski*, 290 N.W.2d 218, 219 (N.D.1980). Under Rule 608(b), N.D.R.Evid.,[3] a trial court may, in its discretion, allow a witness to be impeached through cross-examination with regard to specific instances of conduct not resulting in a conviction if the proffered conduct is probative of a witness's character for truthfulness or untruthfulness. *State v. Hilsman*, 333 N.W.2d 411, 412 (N.D.1983); *see also State v. Biby*, 366 N.W.2d 460, 464 (N.D.1985). Rule 608(b) should be interpreted in a manner so as to "strike a balance between the needs of the judicial system and the needs of the individual witness as determined by the unique circumstances of the case in which he is appearing." 3 Weinstein's Evidence ¶ 608[5], at p. 608–28 (1985).

■ The probative value of the evidence sought by counsel's question for the purpose of attacking Hondl's credibility is questionable. Being in the "business of selling marijuana," in itself, is not necessarily indicative of a lack of truthfulness under the standard imposed by Rule 608. *See United States v. Bentley*, 706 F.2d 1498, 1510 (8th Cir.1983), *cert. denied*, 464 U.S. 830, 104 S.Ct. 107, 78 L.Ed.2d 110 (1983), and 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984); *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir.1980); *United States v. Hastings*, 577 F.2d 38, 41–42 (8th Cir.1978). If other purposes existed for this line of questioning, they should have been brought to the attention of the trial court. Upon the record before us, we conclude that the trial court did not abuse its discretion in limiting Padgett's cross-examination on this matter. *See also* Rule 403, N.D.R.Evid.[4]

Padgett also asserts that he is entitled to a new trial because the jury was not informed that a condition of Hondl's probation was that Hondl cooperate in his prosecution. He also claims that the written order should have specified that Hondl testify truthfully. However, any relevance these arguments might have had was lost when Hondl's probation was revoked and he was incarcerated two weeks before Padgett's trial for violation of other probation conditions.

Padgett's assertions that his conviction should be reversed because of a "great variance" in prosecution witnesses' testimony and because the prosecutor "vouched for the credibility" of Graff during closing arguments are without merit. Any variance in the witnesses' testimony posed a factual question for resolution by the jury. When read in its entirety, the prosecutor's closing argument, during which no objections were made, merely addressed the conflict in testimony between prosecution witnesses and did not constitute an improper vouching for the credibility of any witness.

In accordance with this opinion, the criminal judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

**3.** Rule 608(b), N.D.R.Evid., provides:

"*(b) Specific Instances of Conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. However, in the discretion of the court, if probative of truthfulness or untruthfulness, they may be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another

witness as to which character the witness being cross-examined has testified."

**4.** Rule 403, N.D.R.Evid., provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."