201 Cal.App.3d 1527 (1988)
247 Cal. Rptr. 795
THE PEOPLE, Plaintiff and Respondent,
v.
STEVEN ANDREW BOYETTE, Defendant and Appellant.
Docket No. H002759.
Court of Appeals of California, Sixth District.
May 26, 1988.
*1529 COUNSEL
Alan G. Marer, under appointment by the Court of Appeal, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Blair W. Hoffman, Aileen Bunney and Bob Calo, Deputy Attorneys General, for Plaintiff and Respondent.
*1530 OPINION
AGLIANO, P.J. 

1. Introduction

Defendant Steven Boyette appeals from the judgment following his conviction by a jury of first degree burglary. (Pen. Code, §§ 459-460.) We remand with directions that the trial court determine whether defendant was deprived of pretrial discovery and if so, provide defendant relief including a new trial, as appears appropriate.

2. Trial Evidence

At about 11 p.m. on Saturday, July 12, 1986, Delbert Slabaugh realized that a wooden china cabinet had been stolen from his house in San Jose earlier that day while he was gone.
Slabaugh met defendant two years earlier when defendant did some work for him in exchange for a truck. Defendant took up residence in a trailer on Slabaugh's premises in November 1984, and had permission to use an exterior bathroom in Slabaugh's house. In May 1986 defendant began helping Slabaugh with odd jobs.
Defendant helped Slabaugh move the china cabinet into the house four to six weeks before the burglary. Slabaugh told defendant he would have no work for him on July 12, 1986, because he had to attend traffic school.
Five-year-old Justin R. lived with his family upstairs in Slabaugh's house. He testified he saw defendant remove a screen and open a window of the master bathroom, climb in, unlock the front door and, with the assistance of an unknown person, load a cabinet into defendant's truck. Defendant told Justin not to watch how he entered the house. Before driving off, defendant said they were going to say they got the cabinet at the flea market.
Christopher Morgan testified he saw defendant and another person peer into a back window of Slabaugh's house around 10:30 or 11 a.m. on July 12, while he was mowing his grandmother's lawn. He had seen defendant once before.
Slabaugh looked into defendant's truck when defendant returned to the premises the next night. The rear of the truck was cleaned out. The following morning, Slabaugh saw the rear of the truck was full as usual.
*1531 Santa Clara County Deputy Sheriff Timothy Hooper was among the five officers who arrested defendant in his trailer on Slabaugh's premises on the morning of July 14, 1986. Hooper read defendant his rights and told him he was being arrested for burglary. Hooper also explained the police had two witnesses who saw him go into the house. Defendant responded, "No one saw me go into the house."
About a week after the arrest, Slabaugh found in defendant's truck a tape dispenser which Slabaugh had kept in the china cabinet.
An alibi defense was provided by Vivian Reed, who had known defendant for 20 years, and her mother-in-law, Ojuana Reed. Both claimed he had spent July 12 at their residence in Santa Clara, after partying with Vivian the night before. Santa Clara Police Officer Michael Kinoshita testified he had awakened defendant in his truck about 6 a.m. on July 12 near the Reed's residence. Ojuana testified that defendant was at her house while she was there, but that she was gone between 10 a.m. and noon. Vivian testified defendant was with her at her residence throughout the day, and specifically remembered him being there at 11:30 a.m. for breakfast. He did not accompany her on at least one trip to the store.

3. Inspection of Prosecution Witness's Psychiatric and Medical Records

(1a) Defendant claims the trial court erred in not ordering disclosure of, or itself examining, psychiatric and medical records of Justin R. relative to determining his competency and credibility as a witness.
Defendant subpoenaed these records from county offices and moved for their disclosure before trial, arguing their possible relevance to the minor witness's competency and credibility. County counsel opposed disclosure, arguing that the records were confidential and that the court could determine the minor's competency without them. The trial court denied defendant's motion, finding both an insufficient showing of the record's relevance to either issue and their irrelevance to the court's determination of competency. The court earlier expressed a concern for the privileged nature of medical communications, although this was not articulated as a basis for the ruling.
The records sought by defendant are made confidential by Welfare and Institutions Code section 5328, but disclosure is authorized "(f) To the courts, as necessary to the administration of justice." Insofar as these records contain confidential patient-physician and patient-psychotherapist communications, these communications are privileged from disclosure. (Evid. Code, §§ 994, 1014; People v. Pack (1987) 194 Cal. App.3d 1512, *1532 1516-1518 [240 Cal. Rptr. 367].) However, these privileges may have to yield to a criminal defendant's constitutional rights.
People v. Reber (1986) 177 Cal. App.3d 523 [223 Cal. Rptr. 139] held, "The [psychotherapist-patient] privilege may be overrid[d]en only if and to the extent necessary to ensure [criminal] defendants' constitutional rights of confrontation." (Id. at p. 532.) There the trial court erred by failing to even review subpoenaed psychotherapy records of victim-witnesses in order to determine "which privileged matters, if any, were essential to the vindication of defendants' rights of confrontation." (Ibid.) Conceivably the records contained evidence of mental capacity "highly probative on the issue of a witness' credibility." (Id. at p. 530.)
We note that Reber perceived the conflict as between a "statutory privilege of confidentiality" and "the constitutional right of confrontation and cross-examination." (Id. at p. 531.) However, "[t]he psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy. (Cal. Const., art. I, § 1; [citations].) (2) It is also well established, however, that the right to privacy is not absolute, but may yield in the furtherance of compelling state interests." (People v. Stritzinger (1983) 34 Cal.3d 505, 511 [194 Cal. Rptr. 431, 668 P.2d 738].)
Pennsylvania v. Ritchie (1987) 480 U.S. 39 [94 L.Ed.2d 40, 107 S.Ct. 989], held that a criminal defendant was entitled under the due process and compulsory process clauses upon request for discovery to have the trial court conduct an in chambers review of confidential investigation records about the victim-witness. (Id. at pp. 55-61 [94 L.Ed.2d at pp. 56-60, 107 S.Ct. at pp. 1000-1004].) Further, while recognizing a strong public interest in keeping confidential child abuse investigations, the court held the trial court should disclose information which is material to the fairness of the trial and the defense of the accused. The court refused to speculate about what type of disclosable, exculpatory information the confidential records might contain, whether relevant to competency, credibility, or some other issue, but left this determination to the trial court in reviewing the records in chambers. (Id. at p. 59 [94 L.Ed.2d at p. 58, 107 S.Ct. at pp. 1002-1003].) (3) This holding derives from the principle "that the Government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment.... `[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" (Id. at p. 57 [94 L.Ed.2d at p. 57, 107 S.Ct. at p. 1001].)
It is notable that Ritchie involved a statute similar to Welfare and Institutions Code section 5328 (id. at pp. 37-38, fn. 2 [94 L.Ed.2d at p. 49, 107 *1533 S.Ct. at pp. 994-995]) which did not purport to prevent all disclosure in criminal investigations (id. at pp. 57-58 [94 L.Ed.2d at pp. 57-58, 107 S.Ct. at p. 1002]). Also, a plurality, without citing Reber, rejected its approach of basing this right to pretrial discovery on the confrontation clause (id. at pp. 51-56 [94 L.Ed.2d at pp. 53-56, 107 S.Ct. at pp. 998-1000]).
People v. Caplan (1987) 193 Cal. App.3d 543 [238 Cal. Rptr. 478], held, in light of Reber and Ritchie, the trial court had erred in upholding a patient's claim of privilege against a defendant's discovery request without reviewing a psychotherapist's records about a victim-witness for relevance to credibility. (Id. at p. 558.)
The People seek to distinguish these cases as pertaining to victims of sexual crimes, but their reasoning applies equally to other crimes and other kinds of witnesses.
The People also contend that defendant's showing did not justify trial court review of the records. The People contend that defense counsel "must state in his affidavit the specific reasons why he needs the records and how the records could support his theory."
We observe this is not a case arising under a statute requiring an affidavit demonstrating good cause and materiality to warrant discovery. (E.g., Evid. Code, § 1043; City of Santa Cruz v. Superior Court (1987) 190 Cal. App.3d 1669 [236 Cal. Rptr. 155]; Larry E. v. Superior Court (1987) 194 Cal. App.3d 25 [239 Cal. Rptr. 264]; Jalilie v. Superior Court (1987) 195 Cal. App.3d 487 [240 Cal. Rptr. 662].) (4) Even so, "[a] criminal defendant's motion for discovery must describe the requested information with reasonable specificity and must be sustained by plausible justification for production of the items requested." (Pack, supra, 194 Cal. App.3d 1512, 1517; see People v. Memro (1985) 38 Cal.3d 658, 677-678 [214 Cal. Rptr. 832, 700 P.2d 446], and cases there cited.) (1c) It is unquestioned that defendant described the records with specificity.
Defense counsel identified the records and declared they were relevant and material "in order to prepare and present an adequate defense" and "in that they will aid the court in making a determination as to the competency" of the minor witness. In arguing for disclosure, defense counsel further asserted that the records may describe an occasion when the minor witness had made a false accusation.
"To require [greater] specificity in this regard would place an accused in the Catch-22 position of having to allege with particularity the very information he is seeking." (Memro, supra, 38 Cal.3d 658, 684; cf. Reber, supra, *1534 177 Cal. App.3d 523, 531.) Under the circumstances, we consider defense counsel's statements sufficient at least to invoke review by the trial court in chambers of the records sought. (Cf. Memro, supra, p. 682, fn. 25; Reber, supra, pp. 531-532.)
We emphasize that we are not requiring disclosure of the witness's medical and psychological records. All we hold is that the trial court must review the records in chambers to determine to what extent they were privileged and whether defendant's constitutional rights to a fair trial might overcome any privilege applicable to any particular record.
Ritchie, supra, 480 U.S. 39, 58 [94 L.Ed.2d 40, 58, 107 S.Ct. 989, 1002], indicates that reversal of a conviction was appropriate absent a finding that nondisclosure was harmless beyond a reasonable doubt. (Cf. People v. Caplan, supra, 193 Cal. App.3d 543, 558; compare Reber, supra, 177 Cal. App.3d 523, 532.) We cannot find the error harmless under this standard.
Since the trial court kept the witness's records out, we are unaware whether they might tend to establish either the minor witness was incompetent or his testimony was incredible. In our view, his testimony was important to defendant's conviction. Following is the other evidence connecting defendant to the removal of the cabinet: (1) he helped move it into the house, (2) he was aware the owner was absent on the day of the burglary, (3) he was seen looking into the house on the day of the burglary, (4) the following night the rear of defendant's truck was empty, although it was full the next morning, (5) defendant told the police that no one saw him enter the house, and (6) a week later a tape dispenser once kept in the cabinet was found in defendant's truck.
We cannot say the error was harmless beyond a reasonable doubt. Most of this other evidence is equally susceptible to an innocent explanation, considering that defendant lived on the premises.
In part 7 below we consider what disposition is appropriate. We resolve defendant's other contentions for guidance in further proceedings.

4. Defendant's Admission Was Properly Admitted

(5a) Defendant contends the trial court should have excluded from evidence his statement to the arresting officer.
Defendant made a motion during trial to have his statement excluded. (Evid. Code, § 402, subd. (b).) The arresting officer testified as follows. *1535 When defendant was arrested on the morning of July 14, 1986, at his residence, he was read a standard Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] warning. Before expressly waiving his rights, defendant asked what he was being arrested for. The officer explained that defendant was under arrest for burglary but added that the police had two witnesses who saw him enter the building. Defendant responded, "No one saw me go in the house," and then he expressly waived his rights. The court held that defendant's statement was admissible because it was voluntary.
People v. Murtishaw (1981) 29 Cal.3d 733 [175 Cal. Rptr. 738, 631 P.2d 446] (cert. den. 455 U.S. 922 [71 L.Ed.2d 464, 102 S.Ct. 1280], disapproved on another ground in People v. Lee (1987) 43 Cal.3d 666, 672-676 [238 Cal. Rptr. 406, 738 P.2d 752]) explains our appellate function. (6) "... People v. Jiminez (1978) 21 Cal.3d 595 [147 Cal. Rptr. 172, 580 P.2d 672]... held that the prosecution must prove the voluntariness of a confession beyond a reasonable doubt. (21 Cal.3d at p. 608.)[[1]] That requirement applies equally to admissions by a defendant [citation], and, since confessions or admissions obtained without a valid waiver of Miranda rights are deemed to have been coerced, the prosecution bears also the burden of proving waiver beyond a reasonable doubt. [Citation.] On appeal, it is our `duty to examine the uncontradicted facts to determine independently whether the trial court's conclusion of voluntariness was properly found.' (People v. Jiminez, supra, 21 Cal.3d 595, 609....)" (Id. at p. 753.)
(5b) Defendant acknowledges that a waiver of Miranda rights can be implicit. (North Carolina v. Butler (1979) 441 U.S. 369, 373 [60 L.Ed.2d 286, 292, 99 S.Ct. 1755]; People v. Johnson (1969) 70 Cal.2d 541, 557-558 [75 Cal. Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366] (cert. den. 395 U.S. 969 [23 L.Ed.2d 758, 89 S.Ct. 2120], disapproved on another ground in People v. DeVaughn (1977) 18 Cal.3d 889, 899, fn. 8 [135 Cal. Rptr. 786, 558 P.2d 872]); People v. Davis (1981) 29 Cal.3d 814, 824-826 [176 Cal. Rptr. 521, 633 P.2d 186]; People v. Mitchell (1982) 132 Cal. App.3d 389, 404 [183 Cal. Rptr. 166].) Here it appears that defendant did implicitly waive his Miranda rights when, after being advised of them, he asked the arresting officer the reason for his arrest and chose to respond to the officer's mention of eyewitnesses to the burglary. Even accepting the debatable assumption that the officer's assertion was custodial interrogation (cf. Rhode Island v. Innis (1980) 446 U.S. 291, 298, 301 [64 L.Ed.2d 297, 306, 308, 100 S.Ct. *1536 1682]; People v. Turner (1984) 37 Cal.3d 302, 316-317 [208 Cal. Rptr. 196, 690 P.2d 669], overruled on another ground in People v. Anderson (1987) 43 Cal.3d 1104, 1149 [240 Cal. Rptr. 585, 742 P.2d 1306]; People v. Morris (1987) 192 Cal. App.3d 380, 389-390 [237 Cal. Rptr. 402]; People v. Taylor (1986) 178 Cal. App.3d 217, 224 [223 Cal. Rptr. 638]), defendant's subsequent express waiver of his rights merely confirmed that his response was voluntary.

5. Defendant's Instructions Regarding the Minor Witness Were Properly Refused

(7) Defendant contends the trial court should have given the following proposed instructions regarding the minor witness. "The competency of a witness to give testimony depends on his ability to express himself concerning a subject so as to be understood, on his capacity to tell the truth and on his understanding of the importance to tell the truth, rather than on his attaining a certain age. It is common knowledge that a child of tender years usually does not have the same ability to observe, remember and tell what he or she has seen or heard as an older child or person. In a child of tender years the strength and use of the imagination may frequently be out of proportion to the power of the other faculties, and young children may say what is not true not from deceitfulness but simply because they have acquired their perceptions from suggestion or from imagining what has happened. So you should consider a child's testimony with caution and weigh it in the light of his age, mental capacity, experience and maturity. You should not be influenced by pity or sympathy for any child who was called upon to testify.
"The evidence of children must be scrutinized with great care. In determining the credibility of such testimony, you may take into consideration the probability or improbability of such evidence, whether the child testifying tells a straight story or contradicts himself, whether his testimony is corroborated, whether his testimony is consistent with the physical facts as shown by the evidence, whether he has been coached, whether his testimony shows a knowledge of things and the use of words beyond the knowledge of children of such tender years."
None of the instructions given informed the jury to give special attention to the credibility or competency of the minor witness. The jury was instructed to consider the following in determining any witness's believability, "The extent of the opportunity or ability of the witness to see or hear or otherwise become aware of any matter about which the witness has testified; the ability of the witness to remember or to communicate any matter about *1537 which the witness has testified; the character and quality of that testimony; ..." (CALJIC No. 2.20.)
People v. Rincon-Pineda (1975) 14 Cal.3d 864 [123 Cal. Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845], disapproved of instructing the jury to examine the testimony of a sex crime victim with caution. This disapproval was qualified by the following statement. "Nothing we say in this opinion should be construed as precluding the development of new instructions designed to enhance juries' consideration of particular types of evidence, such as the testimony of a child of tender years." (Id. at p. 883, fn. 6.)
People v. Thomas (1978) 20 Cal.3d 457 [143 Cal. Rptr. 215, 573 P.2d 433] (disapproved on another ground in People v. Tassell (1984) 36 Cal.3d 77, 87-89 [201 Cal. Rptr. 567, 679 P.2d 1]), acknowledged, "Under the general rationale of Rincon-Pineda, it would be appropriate in certain cases for the trial court, in its discretion, to focus the jurors' attention upon specific aspects of the evidence which require the exercise of caution in appraising the testimony of a particular child witness." (Id. at p. 471.) On the other hand, the trial court did not abuse its discretion in rejecting the following instruction. "`You should examine with caution the testimony of children of tender years upon with [sic] and with whom the lewd or lascivious act is alleged to have been committed.'" The court criticized this requested instruction as improperly assuming the testimony of all young children in sex cases is inherently suspect. (Id. at pp. 470-471.)
Thomas essentially reiterates those earlier cases holding no instruction is required, even upon request, that the testimony of otherwise competent witnesses be viewed with caution solely because of their young age. (People v. Putnam (1942) 20 Cal.2d 885, 890 [129 P.2d 367], disapproved on another ground in Rincon-Pineda, supra, 14 Cal.3d 864, 882; People v. Trolinder (1953) 121 Cal. App.2d 819, 824-825 [264 P.2d 601]; see Annot. (1984) 32 A.L.R.4th 1196.) Thomas suggests it may be appropriate for an instruction to highlight one part of a child's testimony, but not to generally question the credibility of children. Such an instruction is the type suggested by People v. Sears (1970) 2 Cal.3d 180 [84 Cal. Rptr. 711, 465 P.2d 847]. (People v. Haslouer (1978) 79 Cal. App.3d 818, 832 [145 Cal. Rptr. 234].)
The trial court properly refused defendant's requested instructions, since they generally discredit minor witnesses and do not pinpoint particular aspects of the minor's testimony crucial to the defense. Moreover, the first instruction is argumentative. (People v. Henderson (1985) 163 Cal. App.3d 1001, 1012 [209 Cal. Rptr. 883]; People v. Kaiser (1980) 113 Cal. App.3d 754, 766 [170 Cal. Rptr. 62].)

*1538 6. The Court's Introduction of the Minor Witness

(8) Defendant objects to the trial court's introduction of Justin R. to the jury as a witness.
After the court found the child competent to testify, the jury was called in. The court explained to them: "[L]adies and gentlemen, in your absence we had an opportunity to talk to Justin [R.], this is Justin, he's here on the witness stand and his mother, Mrs. [R.], is with him, and we asked Justin some questions and it's clear to the court that Justin understands what it means to tell the truth and to tell a lie, and he has affirmed that he will tell the truth here in court today when he's asked the questions by the lawyers. It's clear to the court that he understands that he has a duty to tell the truth and he told us he would do that."
This introduction of the minor witness is not a model of neutrality. However, we need not consider whether the trial judge abused his privilege to comment on a witness's credibility. (Compare People v. Rodriguez (1986) 42 Cal.3d 730, 773 [230 Cal. Rptr. 667, 726 P.2d 113].) Allegations of judicial error cannot be considered on appeal when a timely objection and admonition would have avoided any prejudice. (People v. Terry (1970) 2 Cal.3d 362, 398 [85 Cal. Rptr. 409, 466 P.2d 961], cert. den. 406 U.S. 912 [32 L.Ed.2d 112, 92 S.Ct. 1619].) Certainly the judge could have corrected any implication that he vouched for the witness's credibility if defendant had objected. This objection is unavailable on appeal because not timely made at trial. (People v. Lee (1970) 3 Cal. App.3d 514, 528 [83 Cal. Rptr. 715].)
Defendant contends no trial objection was required pursuant to Code of Civil Procedure section 647, which states numerous parts of a civil trial which are deemed excepted to. It is interesting to contrast this section with Penal Code section 1259, which allows an appellate court to review only claims of instructional error absent trial objection. Exceptions are deemed made to instructions in a criminal case. (Pen. Code, § 1176.) Defendant contends the court's introduction of the witness was tantamount to an instruction, but the court clearly apprised the jury when it was giving instructions. The above authority requiring a trial objection controls.

7. Disposition

The judgment of conviction is reversed. The trial court is directed to review the subpoenaed medical and psychiatric records of Justin R. in chambers to determine whether they contain information that probably would have changed the outcome of the trial in light of our discussion in *1539 part 3 above. If the records contain such information, the court shall order such further proceedings including a new trial as appears appropriate. If the records contain no such information or their nondisclosure was harmless beyond a reasonable doubt, the trial court should reinstate the judgment of conviction and sentence. (Cf. Ritchie, supra, 480 U.S. 39, 58 [94 L.Ed.2d 40, 58, 107 S.Ct. 989, 1002].)
Capaccioli, J., concurred.
BRAUER, J., Concurring.
When the trial court found the defendant's statement "voluntary," it obviously used that word in the sense of "volunteered." Voluntariness, as contradistinguished from duress, was never in issue. The trial court's finding was amply supported by the evidence; and as the Miranda decision itself makes clear, volunteered statements of any kind are not barred by the Fifth Amendment. (Miranda v. Arizona (1966) 384 U.S. 436 at p. 478 [16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 10 A.L.R.3d 974].) I believe that the defendant's statement should be discussed in that context rather than under the heading of Miranda waiver.
In all other respects, I agree with the opinion.
NOTES
[1] We recognize the California Supreme Court is currently reviewing whether the burden of proof should be the federal standard of a preponderance of the evidence. (E.g., People v. Markham (Crim. 25539, review granted July 26, 1986); People v. Campos (Crim. 25816, review granted Oct. 2, 1986).) The latest indication is that Jiminez remains California law. (People v. Howard (1988) 44 Cal.3d 375, 394 [243 Cal. Rptr. 842, 749 P.2d 279].)