1998 ND 133

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Adrian M. SPATH, Defendant and Appellant.**

Criminal No. 970230.

Supreme Court of North Dakota.

June 30, 1998.

Rehearing Denied July 16, 1998.

John T. Goff, State's Attorney (on brief), Jennifer L. Thompson, Assistant State's Attorney, and Adam W. Hamm, State's Attorney Law Clerk, Fargo, for plaintiff and appellee; argued by Adam W. Hamm, third-year law student.

Joe A. Johnson, Fargo, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Adrian Spath appeals from a jury verdict finding him guilty of conspiracy to commit murder and conspiracy to commit robbery. We affirm, concluding the trial court's refusal to order a witness to release

her medical records was not an abuse of discretion, the trial court's failure to give a cautionary instruction was not obvious error affecting Spath's substantial rights, and the trial court did not abuse its discretion when it sentenced Spath.

I

[¶ 2] Adrian Spath ("Spath") and his brother were arrested by Fargo police officers on October 23, 1996. The police had been contacted by Spath's girlfriend, who told them Spath and his brother intended to murder and rob the owner of J.T.'s Rock Shop. Spath's girlfriend told the police what Spath would be wearing and that Spath and his brother would be carrying a gun and a homemade silencer in a green duffle bag. The police began surveillance of Spath and his brother, based on the information from Spath's girlfriend, and arrested Spath and his brother after they had passed to within 200 feet of J.T.'s Rock Shop. When the police arrested Spath and his brother, Spath was dressed as his girlfriend had said he would be, and Spath's brother was carrying the green duffle bag. A search revealed a .22 caliber handgun, a homemade silencer, a knife, and two nylon stockings.

[¶ 3] On October 24, 1996, an information was filed charging Spath and his brother with conspiracy to commit murder and conspiracy to commit robbery. On January 7, 1997, an amended information was filed charging Spath and his brother with conspiracy to commit robbery and conspiracy to commit terrorizing. Spath and his brother each pled guilty to the amended information, but Spath later withdrew his guilty plea, at which time the original information was reinstated.

[¶ 4] On May 12, 1997, Spath filed a motion seeking the release of his girlfriend's medical records and funds for an expert witness to review the records. The court held the records would be provided only if Spath's girlfriend voluntarily signed a release, which she later refused to sign. Spath renewed this motion at the beginning of his trial, and it was again denied.

[¶ 5] A jury trial was held at which Spath's brother and Spath's girlfriend both testified.

A federal prisoner who had been at the North Dakota State Hospital when Spath was there for an evaluation testified Spath told him the details of his and his brother's plan. The State also called three police officers to testify about the investigation. Spath testified on his own behalf. The jury found Spath guilty of conspiracy to commit murder and conspiracy to commit robbery.

[¶ 6] During sentencing, the State asked for a total sentence of thirty years. Spath argued that after his guilty plea the State had recommended a substantially shorter sentence. Spath was sentenced to twenty-five years in prison with five years suspended on the count of conspiracy to commit murder, and a consecutive term of four years on the count of conspiracy to commit robbery.

[¶ 7] Spath appeals from the jury verdict and judgment. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06(1). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. §§ 29-28-02, 29-28-06. The appeal is timely under N.D.R.App.P. 4(b).

II

[¶ 8] Spath argues the trial court's refusal to release his girlfriend's medical records denied him a fair trial.

A

[¶ 9] This Court reviews discovery rulings for an abuse of discretion. *Gerhardt v. D.L.K.*, 327 N.W.2d 113, 114-15 (N.D.1982).

B

1

[¶ 10] Prior to trial, Spath moved "for the witness, [his girlfriend's] medical/psychological records to assist the expert in forming his expert opinion for trial." Spath submitted an affidavit stating his girlfriend had "a history of mental illness. She is prescribed medication for her illness and was combining her medication with illicit drug and alcohol use at the time my charges were brought." The State resisted the motion, arguing Spath's:

"request is based entirely on the Defendant's uncorroborated assertions and conclusions. The Defendant's request is unsupported by any factual information. Further, the Defendant's request is made for purposes of preparation for improper impeachment of the State's witness. The issues raised by the Defendant are matters which can be addressed directly with the witness.

"The Defendant's request for a witnesses [sic] medical records is unsupported by any legal theory of relevance and is in violation of medical privileges belonging to the witness. The Defendant should be required to present some reasonable and factual argument to support his conclusions that the witnesses [sic] medical records are relevant to this case."

[¶ 11] The trial court's order indicates a hearing was held on the motion, but no transcript of this hearing has been provided on appeal. *See* N.D.R.App.P. 10(b). The trial court's order does reflect Spath argued a deposition of his girlfriend showed "she was unaware of her specific diagnosis for mental illness, and was unable to answer other specific questions about her mental illness."[1] The trial court's order also explains Spath argued for the release of his girlfriend's records because "the information contained in [his girlfriend's] medical records could be exculpatory to the Defendant in that it could show that [she] was suffering from delusions, paranoia or hallucinations."

[¶ 12] The trial court concluded Spath had "failed to provide the Court with a compelling reason to allow him access to [his girlfriend's] medical/psychological records, and to have funds available to retain an expert witness for trial."

2

[¶ 13] On appeal, Spath, citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), contends he "was denied an adequate opportunity to confront . . . [his girlfriend] about the full extent of her psychological history and the effects of her illicit drug use." Spath also argues *Ritchie, State v. Behnke*, 203 Wis.2d 43, 553 N.W.2d 265 (Wisc.Ct.App.1996), and *People v. Boyette*, 201 Cal.App.3d 1527, 247 Cal.Rptr. 795 (1988), "embrace[ ] the concept of a trial court conducting in camera reviews of such records when making a determination as to whether the defense should be permitted access to them."

[¶ 14] In *Pennsylvania v. Ritchie*, 480 U.S. 39, 43, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), Ritchie, who was charged with various sex offenses against his daughter, sought the release of records compiled by Pennsylvania's Children's Youth Services as part of a child abuse investigation. This request was refused by the trial court, because the records were privileged by statute, with an exception for disclosure to a " 'court of competent jurisdiction pursuant to a court order.' " *Id.* at 44, 44 n. 2, 107 S.Ct. 989. Although Ritchie was allowed to cross-examine his daughter, he argued his cross-examination was less effective because he did not know what questions would expose weaknesses in her testimony. *Id.* at 44–45, 51, 107 S.Ct. 989.

[¶ 15] A plurality of the Supreme Court held there was no violation of Ritchie's right to confrontation because he "was able to cross-examine all of the trial witnesses fully." *Id.* at 54, 107 S.Ct. 989. A majority of the Court, however, using a due process analysis, remanded the case to allow an in camera review of the file for a determination of:

"whether it contains information that probably would have changed the outcome of his trial. If it does, he must be given a new trial. If the records maintained by CYS contain no such information, or if the nondisclosure was harmless beyond a reasonable doubt, the lower court will be free to reinstate the prior conviction."

*Id.* at 58, 107 S.Ct. 989.

3

[¶ 16] As in the plurality opinion in *Ritchie*, there was no violation of Spath's

---

1. Our review of Spath's girlfriend's deposition shows she stated she was prescribed lithium because she had a "[c]hemical imbalance, bipolar disorder. Manic depressant." Spath's girlfriend was, however, unable to remember whether she had been clinically diagnosed as manic depressive.

right to confrontation, because Spath was allowed to fully cross-examine his girlfriend. *See id.* at 54, 107 S.Ct. 989.

■ [¶ 17] As for Spath's argument the trial court should have conducted an in camera review, the record is devoid of any evidence that, at any time prior to this appeal, he requested an in camera review of his girlfriend's medical records, nor did he cite *Ritchie, Boyette, Behnke,* or any other case which relates to the discovery of privileged medical records to the trial court. Rather, Spath's request was directly contrary to the holding in *Ritchie,* because he "request[ed] the Court [to] order [his girlfriend] to give the Defense a *copy* of her medical and psychological records...." (Emphasis added). The Supreme Court in *Ritchie* specifically made clear "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Ritchie,* 480 U.S. at 59, 107 S.Ct. 989. Thus, the trial court's refusal to order Spath's girlfriend to provide Spath a copy of her medical records was not an abuse of discretion.

[¶ 18] On appeal, however, Spath cites *Ritchie, Behnke,* and *Boyette,* to argue "[a]t a minimum, the trial court should have conducted an in camera review of the records to determine if they contained information that would have been relevant to" Spath's defense. As noted previously, Spath failed to request in camera review by the trial court and did not cite *Ritchie* or any other case to the trial court supporting the use of in camera review as an alternative to disclosure. The Minnesota Supreme Court, in a case where a request for an in camera review was actually made, but without sufficient basis, explained: "Contrary to petitioner's position,

having the trial court review confidential material is, not a right. It is a discovery option, but only after certain prerequisites are satisfied." *State v. Hummel,* 483 N.W.2d 68, 72 (Minn.1992).

[¶ 19] In addition to failing to raise the issue of in camera review to the trial court, Spath, while citing *Ritchie* on appeal, has also failed to adequately address the significant distinctions between *Ritchie* and the facts of this case. *See, e.g., Fenske v. Fenske,* 542 N.W.2d 98, 100 (N.D.1996) ("Persuasive authority and reasoning must support constitutional claims. A party raising a constitutional challenge 'should bring up his heavy artillery or forego the attack entirely.'" (citations omitted)). In *Ritchie,* the Supreme Court made clear it expressed "no opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to *anyone,* including law-enforcement and judicial personnel." *Ritchie,* 480 U.S. at 57 n. 14, 107 S.Ct. 989. Whereas the Pennsylvania statute at issue in *Ritchie* permitted disclosure to "[a] court of competent jurisdiction pursuant to a court order," *id.* at 44 n. 2, 107 S.Ct. 989, North Dakota Rule of Evidence 503, which does contain some limited exceptions, does not contain a general exception for disclosure of pre-existing medical records upon court order.[2]

[¶ 20] Spath also failed to address the importance of who possessed the records he sought. In *Ritchie,* the issue was "whether and to what extent a State's interest in the confidentiality of *its* investigative files concerning child abuse must yield to a criminal defendant's Sixth and Fourteenth Amendment right to discover favorable evidence." *Ritchie,* 480 U.S. at 42–43, 107 S.Ct. 989

---

2. (d) Exceptions.

(1) *Proceedings for Hospitalization.* There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, including alcohol or drug addiction, if the psychotherapist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization.

(2) *Examination by Order of Court.* If the court orders an examination of the physical, mental, or emotional condition of a patient, whether a party or a witness, communications made in the course thereof are not privileged

under this rule with respect to the particular purpose for which the examination is ordered unless the court orders otherwise.

(3) *Condition an Element of Claim or Defense.* There is no privilege under this rule as to a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

(emphasis added). In other words, in *Ritchie*, the records the defendant sought were actually held by a state agency, although the prosecution had not seen them. *Id.* at 43–44, 44 n. 4, 107 S.Ct. 989. In this case, there is no evidence the State had seen or had access to Spath's girlfriend's medical records, nor is there any evidence any other state agency held her medical records.

[¶ 21] In addition to failing to discuss these critical distinctions, the other cases cited in Spath's appellate brief, *State v. Behnke*, 203 Wis.2d 43, 553 N.W.2d 265 (Wisc.Ct.App.1996), and *People v. Boyette*, 201 Cal.App.3d 1527, 247 Cal.Rptr. 795 (1988), are virtually useless to his cause. While *Behnke* does allow an in camera review of a witness's medical records when the defendant makes a sufficient showing, Wisconsin courts require patient consent before any records may ultimately be disclosed to the defendant. *See State v. Shiffra*, 175 Wis.2d 600, 499 N.W.2d 719, 724–25 (Wisc.Ct.App.1993) (affirming trial court's suppression of the testimony of a witness who refused to disclose her psychiatric records); *see also State v. Solberg*, 211 Wis.2d 372, 564 N.W.2d 775, 781 (1997) ("If the circuit court determines that the records contain [material] information, that information should be disclosed to the defendant *if* the patient consents to such a disclosure." (emphasis added)); *State v. Speese*, 199 Wis.2d 597, 545 N.W.2d 510, 516 n. 12, 517 (1996) (noting result in *Shiffra*, but refusing to address whether suppression is proper sanction because issue was neither raised nor fully briefed). Additionally, *Boyette* was "disapproved" by the California Supreme Court in *People v. Hammon*, 15 Cal.4th 1117, 65 Cal.Rptr.2d 1, 938 P.2d 986 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1071, 140 L.Ed.2d 130 (1998). In *Hammon*, the California Supreme Court "decline[d] to extend the defendant's Sixth Amendment rights of confrontation and cross-examination to authorize pretrial disclosure of privileged information" and held "the trial court did not err in refusing to review in camera the documents sought by subpoena." *Id.* 65 Cal.Rptr.2d 1, 938 P.2d at 993. Thus, in California, even if a sufficient showing is made, a trial court is not required to allow pretrial "review or grant discovery of privileged information in the hands of third party psychotherapy providers." *Id.* 65 Cal.Rptr.2d 1, 938 P.2d at 987.

[¶ 22] Because, under *Ritchie*, Spath clearly is not entitled to a copy of his girlfriend's medical records and because Spath failed to request an in camera review of the records [3] and failed to adequately raise *Ritchie* and its progeny both below and on appeal, we conclude the trial court did not abuse its discretion in refusing to order Spath's girlfriend to release her medical records.

## III

[¶ 23] Spath also argues he was denied a fair trial because the prosecution made references to his brother's criminal acts and thus it is likely the jury improperly considered evidence of his brother's criminal acts as evidence of Spath's guilt.

### A

[¶ 24] The "conviction or guilty plea of a co-defendant may not be used as substantive evidence of another's guilt." *E.g., State v. Welch*, 426 N.W.2d 550, 553 (N.D.1988). Although Spath and his brother "are not 'co-defendants' in the literal sense of the term, the same rationale applies when two persons are charged with separate offenses growing out of the same circumstances." *State v. Padgett*, 410 N.W.2d 143, 146 n. 1 (N.D.1987).

### B

[¶ 25] Spath points to several references made during the trial, which he argues denied him a fair trial. During opening statements, the State told the jury Spath's brother would testify and he was currently

---

3. While we do not decide whether N.D.R.Ev. 503 must in some cases give way to a defendant's right to discover favorable evidence, the Supreme Court in *Ritchie* held a defendant is not entitled to an in camera review by the trial court "without first establishing a basis for his claim that it contains material evidence." *Ritchie*, 480 U.S. at 58 n. 15, 107 S.Ct. 989. Thus, even if we were to conclude N.D.R.Ev. 503 must give way to Spath's constitutional rights, the trial court was not required to automatically grant an in camera review.

incarcerated at the Cass County jail, but was usually incarcerated at the state penitentiary. No objection to this comment was made by Spath's trial counsel. During the trial, the State asked Spath's brother why he was in prison, but the defense objected, and the trial court sustained the objection. Spath's brother was later asked whether he remembered being arrested on October 23, whom he was with when arrested, and whether they were carrying a gun and silencer at the time. There were no objections to these questions. Spath also argues that during closing arguments, "the State emphasized [Spath's brother's] testimony and urged the jury to find that the two brothers had come together in a meeting of the minds and formed an agreement to commit the charged crimes." There was no objection made to these comments. Upon completion of the testimony and arguments, there was no request for a cautionary instruction that the jury could not consider evidence of Spath's brother's guilt against Spath, nor was such an instruction given.

[¶ 26] This Court has previously held the failure to request a cautionary instruction "waives the objection to the allegedly prejudicial statement," *Welch,* 426 N.W.2d at 553, and limits this Court's inquiry "to determining whether the alleged error constitutes an obvious error which affects substantial rights of the defendant." *Padgett,* 410 N.W.2d at 146 (citing N.D.R.Crim.P. 52(b)). The obvious error doctrine is to be used "sparingly to correct only particularly egregious errors." *Welch,* at 554. Spath "concedes that defense counsel should have moved for a mistrial, or in the alternative, should have requested a cautionary jury instruction," and "acknowledges . . . the trial court's failure to give such an instruction, where the defendant neither requested it nor objected to its absence, does not constitute per se reversible error under" *Welch* and *Padgett,* but nevertheless argues the record reflects his brother's testimony was crucial and caused the jury to consider his brother's criminal acts as evidence of his guilt.

[¶ 27] In *Padgett,* during Padgett's trial for delivery of controlled substances, the State asked Padgett's "co-defendant" whether he had previously been convicted of the same

offense Padgett was on trial for, based on the same set of facts, to which the "co-defendant" answered affirmatively. *Padgett,* 410 N.W.2d at 146. This Court noted the prosecution's references to Padgett's "co-defendant's" guilt was "not for the purpose of constituting substantive evidence of Padgett's guilt, but for the purpose of laying the groundwork for showing that [Padgett's "co-defendant's"] memory of the specific details of the delivery may have eroded." *Id.* at 146–47. This Court also noted the mention during closing argument of Padgett's "co-defendant's" conviction "was made in relation to witness credibility" and was not "unduly emphasized." *Id.* at 147. This Court concluded "the trial court's failure to give the cautionary instruction sua sponte [was not] obvious error affecting Padgett's substantial rights." *Id.*

[¶ 28] In *Welch,* during Welch's trial on various drug charges, the State in its opening argument stated Welch's girlfriend had been convicted of possession of a controlled substance, based upon the same set of facts from which Welch's charges arose. *Welch,* 426 N.W.2d at 552. This Court stated, "At the very least, the opening statement suggested guilt by association," and as such "the prosecutor's statement . . . was clearly improper." *Id.* at 553. This Court concluded, however, the failure to give a curative instruction was not obvious error because Welch's girlfriend's "conviction was not the basis of any argument," it "received no emphasis during the trial," "the trial court instructed the jury both on the meaning of a sustained objection, and the nonevidentiary quality of opening statement, and that counsel's remarks must not be considered evidence," and "the evidence against Welch, although circumstantial, was substantial." *Id.* at 554 (footnotes omitted).

[¶ 29] In this case, the State's comments and questions are more ambiguous than the direct references to the co-defendants' convictions in *Padgett* and *Welch.* The State did briefly and without much emphasis tell the jury during opening argument that Spath's brother was currently in prison, but the State did not say what Spath's brother had been convicted of, or whether it was related

to this case. *Cf. Welch,* 426 N.W.2d at 552; *Padgett,* 410 N.W.2d at 146. Additionally, the jury was instructed the opening and closing arguments of counsel were not evidence. *Cf. Welch,* at 554.

[¶ 30] The State's question to Spath's brother about why he was in prison was similar to the comments and questions in *Padgett* and *Welch,* but unlike *Padgett* and *Welch,* was objected to before Spath's brother had an opportunity to answer. The trial court sustained the objection, and the jury had previously been instructed about the effect of a sustained objection. *Cf. Welch,* 426 N.W.2d at 554. Additionally, to the extent this question was improper because it might be used to infer Spath was guilty, this Court explained in *Padgett:* "If the co-defendant testifies . . . either the prosecution or defense may elicit evidence of the guilty plea or conviction for the jury to consider in assessing the co-defendant's credibility as a witness, or to show his acknowledgment of participation in the offense." *Padgett,* 410 N.W.2d at 146. The State asked Spath's brother why he was in prison only after he denied Spath had ever talked to him about robbing the owner of the Rock Shop. After the trial court sustained the objection, the State did not unduly emphasize Spath's brother's confinement, but rather moved on to a different line of questioning. *See id.* at 147. Not until six transcript pages later did the State ask Spath's brother whether he remembered being arrested on October 23, whom he was with, and what he and his brother had with them at the time. These questions relate to Spath's brother's credibility, because they followed his testimony that he and his brother had made a silencer and were going to walk over to a train yard to "shoot stuff." Thus, while these facts are incriminating, at the time of these questions the State did not refer to Spath's brother's decision to plead guilty, but rather focused on the sequence of events leading up to the arrest.

[¶ 31] Spath has also referred us to portions of the State's closing argument, arguing the State emphasized Spath's brother's testimony. Our review of these pages, however, discloses the State referred neither to Spath's brother's guilty plea nor to his arrest. Throughout the trial several other witnesses, including Spath's girlfriend, whom Spath's appellate brief refers to as the prosecution's "star witness," and a federal prisoner, who had been at the state hospital during the time Spath was there, testified much more directly against Spath than did his brother, and the State also discussed the testimony of each of these witnesses during its closing argument. Thus, while some of the State's questions and comments during the trial noted the fact Spath's brother had been arrested, they largely reflected upon his brother's credibility and lack of acknowledgment of participation in the offenses. While the trial court should have instructed the jury about the limited purpose for which such evidence may be considered, *Padgett,* 410 N.W.2d at 146, because the questions were brief and not unduly emphasized, other relevant instructions were given to the jury, and there was substantial additional evidence against Spath, we conclude the trial court's failure to give a cautionary instruction was not obvious error affecting Spath's substantial rights.

## IV

[¶ 32] Spath also argues the trial court abused its discretion when it sentenced him.

### A

[¶ 33] "The trial court is allowed the widest range of discretion in criminal sentencing. On appeal, we have no power to review the sentencing court's discretion in fixing a term of imprisonment within the range authorized by statute. Appellate review of a criminal sentence is generally confined to whether the [trial] court acted within the sentencing limits prescribed by statute, or substantially relied upon an impermissible factor." *State v. McClean,* 1998 ND 21, ¶ 4, 575 N.W.2d 200 (citations and internal quotation marks omitted).

### B

[¶ 34] Spath does not argue the length of the sentences or the imposition of consecutive sentences violate any statute. Spath's argument is the trial court's conclu-

sion he had not cooperated with law enforcement and had shown no remorse "lead to the unescapable conclusion that Mr. Spath was sentenced to 24 years in prison because he exercised his constitutional rights and did not follow through on an earlier plea bargain." Spath argues this conclusion is supported by the fact the State had earlier recommended a sentence of four years.

[¶ 35] Spath's argument, however, ignores the fact the State's earlier sentencing recommendation was based upon Spath pleading guilty to the conspiracy to commit robbery charge and the lesser charge of conspiracy to commit terrorizing.

[¶ 36] Spath has also mischaracterized the trial court's consideration of the sentencing factors. Spath argues the trial court stated Spath had failed to cooperate with law enforcement, and argues the trial court was impermissibly referring to the withdrawal of his guilty plea. The transcript of the sentencing hearing, however, shows the trial court's complete statement was "Defendant did not cooperate with any law enforcement authorities by bringing *other* offenders to justice." (Emphasis added). Clearly, the trial court was not considering Spath's refusal to plead guilty, but only the lack of assistance Spath had provided in bringing *others* to justice.

[¶ 37] Spath's argument the trial court's statements about him showing no remorse indicate it punished him for failing to plead guilty also mischaracterizes the record. This Court has previously set aside a sentence because "it appear[ed] that the trial court may have 'substantially relied upon' one or both of two impermissible factors" when the trial court during sentencing stated: "'He didn't take the first step to rehabilitation, which generally includes making a complete admission of his implicity in the offense and throwing himself on the mercy of the Court.'" *State v. Hass*, 268 N.W.2d 456, 463–64 (N.D.1978). In this case, however, the trial court clearly recognized the precarious nature of the proceedings: "The Defendant continues to show no remorse. He takes no responsibility. I understand that he has an appeal pending. I didn't expect him to come in here and plead guilty or say he

was guilty and beg for mercy. But I expected some expression of remorse.... It is clear that the Defendant perceives himself as the victim in this entire process." Also, unlike *Hass*, the sentencing transcript clearly reflects the trial court considered all of the sentencing factors and Spath's failure to show remorse was but one consideration.

[¶ 38] We conclude the trial court did not substantially rely upon an impermissible factor in determining Spath's sentence, and we therefore affirm the sentencing decision.

V

[¶ 39] The conviction and sentence are affirmed.

[¶ 40] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.

